Bos Lines, Inc., Transferee v. Commissioner. Bos Lines, Inc., Transferee of the Transferee v. Commissioner.
Bos Lines, Inc. v. Commissioner
Docket Nos. 4778-62, 4404-63.
United States Tax Court
T.C. Memo 1965-71; 1965 Tax Ct. Memo LEXIS 259; 24 T.C.M. (CCH) 370; T.C.M. (RIA) 65071; March 30, 1965
*259 Transferee liability. - Two motor carrier corporations, Truck and Freight, each received in 1952 an award from the Motor Carrier Claims Commission for use of its property by the Government in 1944-1945. Respondent determined a deficiency against each, and each filed a petition in the Tax Court. In 1957 Freight purchased all the stock of Truck and dissolved it. Also in 1957 petitioner was incorporated by the stockholders of Freight, took over the business, and Freight was dissolved. In 1959 petitioner elected, pursuant to section 99 of the Technical Amendments Act of 1958, to treat the award Freight had received in 1952 as income received in 1944-1945. In 1960, pursuant to stipulation, decisions were entered by the Tax Court that there was no deficiency due by Freight and that a deficiency of $32,427.98 was due from Truck. Respondent determined that petitioner is liable for such deficiency and interest thereon as transferee, or as transferee of the transferee, of Truck. Held: (1) The Tax Court decision entered against Truck is valid; (2) The statute of limitations does not bar these proceedings; (3) Petitioner is liable as transferee of assets of Truck for the deficiency; (4) Petitioner *260 did not elect under section 99 of the Technical Amendments Act of 1958 to treat the award received by Truck as income received in 1944-1945; and (5) Petitioner is liable for interest on the deficiency from March 15, 1953. Arley J. Wilson, Masonic Temple, Marshalltown, Iowa, and Allen E. Brennecke, for the petitioners. Ivan L. Onnen, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: These consolidated proceedings involve a deficiency in corporation income tax in the amount of $32,427.98 for the calendar year 1952 due from Bos Truck Lines, Inc., pursuant to a decision entered by this Court in November 1960 in Docket No. 61336. The respondent has determined that Bos Lines, Inc., the petitioner herein, is liable for such deficiency and interest thereon, either as transferee, or as transferee of the transferee, of assets of the taxpayer. The issues for decision are (1) whether the decision entered against the transferor was valid; (2) whether the present proceedings are barred by the statutory period of limitations; (3) whether the petitioner is liable as a transferee of assets of the transferor, or, alternatively, as transferee of the transferee of such *261 assets; (4) whether the petitioner's election to claim the benefits of section 99 of the Technical Amendments Act of 1958, 72 Stat. 1673 (Sept. 2, 1958), was effective as to Bos Truck Lines, Inc. ; and (5) to what extent is petitioner liable for interest on the deficiency. Some facts are stipulated. Findings of Fact The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The petitioner, Bos Lines, Inc., sometimes hereinafter referred to as Lines, was incorporated July 5, 1957, under the laws of the State of Iowa. Its principal place of business is in Marshalltown, Iowa. All of its capital stock was issued to A. H. Bos and his wife, Isabelle C. Bos, in July 1957 in exchange for all the outstanding capital stock of Bos Freight Lines, Inc. Bos Freight Lines, Inc., sometimes hereinafter referred to as Freight, was incorporated under the laws of Missouri on July 14, 1937. Its stock consisted of 2,500 shares, all of which was held by A. H. Bos and Isabelle C. Bos. Its principal place of business was in Marshalltown, Iowa. It was dissolved and liquidated in July 1957, and notice of dissolution was given as required by the laws of Missouri. Bos Truck *262 Lines, Inc., sometimes hereinafter referred to as Truck, was incorporated under the laws of Nebraska in 1937. Its principal place of business was at Marshalltown, Iowa. Its capital stock was owned by Joe Bos and his wife, Lydia M. Bos, until 1957. It was dissolved on or about April 26, 1957, and notice of dissolution was given as required by the laws of Nebraska. Truck and Freight were engaged in business as common carriers of property by motor vehicle. Lines is successor to the business of Freight. Joe Bos and A. H. Bos are brothers. Prior to 1937 they were partners in business, but separated as a consequence of personal disagreement. They operated the separate corporations, Truck and Freight, from 1937 through 1956 in competition with each other. Joe Bos and Lydia Bos at no time owned any of the capital stock of Freight. A. H. Bos and Isabelle C. Bos at no time owned any of the capital stock of Truck. In 1944 the United States Government took over the control and operation of Truck and kept such control and operation during the remainder of 1944 and part of 1945. In 1952 Truck received an award of $74,890.05 from the Motor Carrier Claims Commission for the use of its facilities and *263 equipment by the Government during 1944 and 1945. The Government also took over control and operation of Freight during such years, and later an award was paid to Freight for such use of its facilities and equipment. On December 12, 1955, respondent determined a deficiency in income tax of Truck for 1952 in the amount of $37,713.26. The determination held that the award from the Motor Carrier Claims Commission, less attorneys' fees and other expenses, constituted taxable income in 1952. A timely petition was filed by Truck with the Tax Court of the United States. The attorney representing it in that proceeding was Joseph A. Maun, of St. Paul, Minnesota, who held a power of attorney to represent Truck, signed by Joe Bos, president, under date of September 24, 1954. The power authorized Maun to execute all agreements as fully as the corporation might do in its own capacity, at any time subsequent to the date thereof. The proceeding was assigned Docket No. 61336. Respondent determined a deficiency in income tax of Freight for 1952. A petition was filed with the Tax Court of the United States for a redetermination of such deficiency. The proceeding was assigned Docket No. 58750. Prior *264 to 1957 Joe and Lydia Bos offered to sell the stock of Truck to Freight, and approval of the Interstate Commerce Commission, hereinafter referred to as the ICC, was asked. Approval was given early in 1957, and the transfer was negotiated to be effective as of March 1, 1957. Pursuant to a contract Freight purchased all the capital stock of Truck. The total purchase price to be paid by Freight to Joe Bos and Lydia Bos was $456,350, payable $106,350 down and the balance of $350,000 to be paid monthly over a period of six years and eleven months. The agreement whereby Freight, as first party, purchased from Joe Bos and Lydia Bos, as second parties, all the stock of Truck, contained the following provision: It is further mutually agreed that all liabilities, determined or contingent, known or unknown of the Bos Truck Lines, Incorporated, and whether disclosed or not disclosed by the Corporate records, shall be and continue to be the obligation of the Bos Truck Lines, Incorporated, and no recourse thereon shall in any manner be had upon second parties or either of them by virtue hereof. Freight borrowed from Northwestern National Bank of Minneapolis and executed a note and chattel mortgage *265 dated February 21, 1957, to the bank in the amount of $170,065 on all its operating rights and franchises and personal property, including that acquired from Truck. Freight made the down payment to Joe Bos and Lydia Bos. Freight also executed a promissory note and subordinate chattel mortgage on the same date in the amount of $350,000 to Joe Bos and L. M. Bos to secure payment of the balance of the purchase price. After the incorporation of Lines, it acquired, on or about July 14, 1957, all the assets of Freight and assumed its liabilities in complete cancellation of all the stock of Freight. Freight was thereupon dissolved. Lines filed a corporation income tax return for the year 1957, reporting the income for the entire year from operations of Freight and Lines during the periods of their existence in such year. The return showed the corporation name as "Bos Lines, Inc. (Bos Freight Lines, Inc.)," and contained the following explanation: On July 5, 1957 the Bos Freight Lines, Inc. (a Missouri Corporation) was reincorporated under the laws of Iowa. This was a reorganization under Section 368(a)(1)(F) of the Revenue Code and the new entity has exactly the same stockholders having the *266 same interests as before. The 1957 return is filed for the operations of the business for the entire year of 1957. The following statement was also included in the return: On February 25, 1957 the Company acquired all of the capital stock of the Bos Truck Lines, Inc., an Iowa Corporation, for an amount of $496,350.00. Upon this acquisition the Board of Directors immediately adopted a plan of liquidation whereby the net assets of the Bos Truck Lines, Inc. were taken over by the acquiring corporation, Bos Lines, Inc. The basis of the property received in liquidation was elected under Section 334(b)(2) of the 1954 Revenue Code. The ownership of the stock at date of liquidation was the Bos Lines, Inc., who owned 100% of the outstanding stock of the Bos Truck Lines, Inc. Value of the properties received in distribution were as follows: Cash
$ 4,643.40
Accounts Receivable
113,484.45
Parts and Supplies
22,773.84
Prepaid Expenses
29,227.01
Carrier Operating Property
546.490.00
Investments
6,425.52
Franchises and Intangibles
6,473.72
Deferred Charges
901.15
$730,419.09
Liabilities Assumed
$234,069.09
The balance sheets in the return showed the following: Beginning
Assets
of Year
End of Year
Cash
$ 24,519
$ (818.90)
Accounts receivable
233,016
183,817.15
Supplies
25,255.19
Depreciable assets less
reserve
286,384
1,058,747.67
Prepaid expenses
21,992
186,812.93
Operating rights and
franchises
13,312
157,185.78
Deferred debits
6,292.50
Total Assets
$579,223
$1,617,292.32
Liabilities
Accounts payable
$295,116
$ 217,804.13
Mortgages payable
161,506
1,303,581.60
Accrued expenses
26,446
60,679.55
Loss and damage
claims
19,760
12,688.67
Advances payable
7,082.09
Deferred credits
3,750.00
Capital stock
25,000
25,000.00
Earned surplus
51,395
(13,293.72)
Total liabilities
$579,223
$1,617,292.32
*267 The deductions claimed on the return included $12,888.48 for uncollectible revenue. Truck filed a final corporation income tax return for the period January 1 to February 28, 1957, reporting the income from operations during that period. The return showed no tax due. It explained that the assets were disposed of and the corporation was dissolved. Attached to the return were copies of a plan of liquidation of Truck, minutes containing a resolution of the directors of Truck that the corporation be dissolved and liquidated and appointing A. H. Bos and Isabelle C. Bos to manage the corporate affairs and distribute the assets, and the consent of Freight, as sole stockholder, to the dissolution of Truck, all dated February 25, 1957. Form 966, a return of information to be filed by a corporation adopting a plan of dissolution, was filed with the district director of internal revenue, Des Moines, Iowa, on March 25, 1957. This notice was signed by A. H. Bos, president. The balance sheets in Truck's final corporation tax return showed the following items: Assets
Beginning
End
Cash
$ 18,408.71
$ 4,643.40
Accounts receivable
102,721.02
113,484.45
Parts and supplies
22,773.84
22,773.84
Prepaid expenses
25,862.62
29,227.01
Other investments
6,270.00
6,425.52
Depreciable assets less
depreciation
390,036.70
417,517.72
Deferred charges
9,043.08
901.15
Total Assets
$575,115.97
$594,973.09
Liabilities and Capital
Accounts payable
$ 45,777.89
$ 28,702.00
Notes payable
40,000.00
Accrued expenses
18,673.01
1,590.68
Long-term obligations
167,471.07
203,776.41
Capital stock
25,000.00
25,000.00
Paid-in surplus
40,000.00
Surplus reserves
278,194.00
295,904.00
Liabilities and Capital
$575,115.97
$594,973.09
*268 The assets transferred to Freight on the liquidation of Truck and their fair market value were as follows: Cash
$ 4,643.40
Accounts receivable
113,484.45
Parts and supplies
22,773.84
Prepaid expenses
29,227.01
Operating property
546,490.00
Investments
6,425.52
Franchises and intangibles
6,473.72
Deferred charges
901.15
$730,419.09
Liabilities of Truck assumed by Freight on liquidation of Truck included trade payables in the amount of $234,069.09. On liquidation of Freight, assets were transferred to Lines, having a fair market value as follows: Cash
[15,392.27)
Special deposits
14,452.16
Prepaid expenses
112,176.94
Materials and supplies
21,505.05
Operating property
821,250.24
Deferred debits
22,758.42
$976,750.54 There were also transferred franchises and intangibles having a book value of $150,167.07 and accounts receivable having a book value of $242,220.47. Lines assumed the following liabilities of Freight upon the latter's dissolution: Accounts payable - general
$ 195,370.20
Accrued wages payable
25,413.58
Accrued taxes and interest
22,442.47
C.O.D.'s unremitted
12,363.72
Other advances payable
6,950.00
Equipment obligations
692,876.30
Long-term obligation to J. and
L. Bos
350,000.00
Reserve for loss and damage
claims
12,916.57
$1,318,332.84
*269 In July 1959 Lines requested from the district director of internal revenue at Des Monies, Iowa, copies of the income tax returns filed by Truck for 1943, 1944, and 1945. The director replied, in part: Gerald E. Mattox, Bos Lines, Inc., 408 South 12th Ave., Marshalltown, Iowa, In re: Bos Truck Lines, Inc. Dear Mr. Mattox: This is in reply to your request of July 9, 1959, for photostatic copies of income tax returns filed by the above named Corporation in 1943, 1944 and 1945. We have checked our files but are unable to find any record of returns filed by them for the above years. * * *
Copies of such returns for 1944 and 1945 were furnished to petitioner in May 1963. In August 1959 Lines wrote the director of internal revenue at Des Moines as follows: In accordance with Section 99 of the Technical Amendments Act of 1958 of the Internal Revenue Code, we hereby elect to spread back the net proceeds of the Motor Carrier Claims Commission award over the period of governmental control. The total amount of settlement was $40,744.63 and the taxable period the government was in control was from August 11, 1944 to October 23, 1945. In July 1960 Lines received a letter from Maun concerning the *270 tax claim against Truck. Under date of July 11, 1960, Lines wrote Maun as follows: In answer to your letter of July 5, 1960, please be advised that the Bos Truck Lines ceased to be a corporation on May 14, 1957, when the charter ran out. Mr. Joe Bos, the principal stockholder, retired. Our company bought the operating rights and equipment and we have no knowledge of this tax claim. Mr. Joe Bos has been in Africa for the past several years. This letter was signed by Gerald E. Mattox, as executive vice president. A decision was entered by the Tax Court on October 7, 1960, in Docket No. 58750 that there was no deficiency due from Freight for the taxable year 1952. This was pursuant to a stipulation signed by Joseph A. Maun, as attorney for Freight. Pursuant to a stipulation signed in 1960 by Maun, as attorney for Truck, a decision was entered by the Tax Court in Docket No. 61336 on November 14, 1960, that there was a deficiency due from Truck for the taxable year 1952 in the amount of $32,427.98. On December 10, 1960, additional income tax for the year 1952 was assessed against Truck in the amount of $32,427.98. A consent, Form 977, fixing the period of limitation upon assessment of liability *271 against a transferee, was executed on behalf of Lines on October 18, 1961, and a further consent was executed on February 20, 1962, extending to October 31, 1962, the time within which the liability of Lines, as transferee, in respect of income tax due from Truck might be assessed, provided, in both consents, that the statute of limitations had not run as of October 9, 1961. Joseph A. Maun was not appointed trustee, receiver, or agent of Truck by any District Court in the State of Nebraska subsequent to the dissolution of Truck. On October 2, 1962, respondent mailed to Lines a notice of its liability as transferee of assets of Truck for the deficiency determined against Truck, plus interest as provided by law. On July 15, 1963, respondent mailed to Lines a notice of its liability as transferee of a transferee of assets of Truck, for such deficiency and interest. Opinion These proceedings involve a deficiency in income tax for the calendar year 1952 determined against Bos Truck Lines, Inc. A petition was filed in this Court by that taxpayer in 1956, and pursuant to a stipulation a decision was entered in November 1960 that there was a deficiency due in the amount of $32,427.98. This *272 amount was assessed against Truck on December 10, 1960, and has never been paid. In 1962 respondent notified petitioner that it is liable as transferee of assets of Truck for such deficiency and interest as provided by law, Docket No. 4778-62. In 1963 respondent notified petitioner that it is liable as transferee of a transferee of assets of Truck for such deficiency and interest, Docket No. 4404-63. Respondent seeks to collect from the petitioner under section 311, Internal Revenue Code of 1939, [1] *273 in the alternative, either as transferee or as transferee of the transferee. The burden of proof is upon the respondent to show that the petitioner is liable as a transferee of property of a taxpayer but not that the taxpayer was liable for the tax. Section 1119(a), Internal Revenue Code of 1939; section 6902, Internal Revenue Code of 1954. The petitioner contends that the stipulation for entry of decision signed in 1960 by Maun, as attorney for Truck, upon which the liability of Truck is based is void and of no force or effect. Maun *274 held a power of attorney to represent Truck in that proceeding whereby he was empowered to execute all agreements as fully as the corporation might do in its own capacity. The petitioner points out that Truck was dissolved in 1957 and notice was given as required by the laws of Nebraska, a final corporation income tax return was filed which stated the corporation was dissolved, and Form 966, a return of information to be filed by corporations adopting a plan of dissolution, was filed with the district director of internal revenue to put the respondent on notice that Truck had been dissolved. Therefore, says the petitioner, the death of the corporation cancelled the power of attorney and the stipulation was invalid. The Revised Statutes of Nebraska (1943) provide in section 21-186 that dissolved or expired corporations shall be continued for five years for the purpose, among others, of prosecuting and defending suits by or against them. Adjustment and settlement of tax liabilities are necessary steps in closing a business. Ann C. Field, 32 T.C. 187 (1959). The proceeding in the Tax Court was pending at the time of the dissolution of Truck in 1957. There was also pending at the same *275 time a proceeding in the Tax Court involving Freight, in which Maun was attorney for that corporation. In July 1960 the petitioner corresponded with Maun concerning the tax case of Truck. The petitioner then, at least, had information that such a case was pending and necessarily had knowledge of Freight's tax case then pending, in which Maun was its attorney. Decision was entered in Freight's tax case in October 1960 based upon a stipulation signed by Maun. There was time between July and November 1960 for the petitioner to take some action in the pending case of Truck. And after decision was entered in November 1960 in that case, or notice received in December, the petitioner, as successor or transferee, or A. H. Bos and Isabelle C. Bos, as liquidating agents of Truck, could have taken action within 90 days after the decision to have it reconsidered. No steps were taken to revoke Maun's power of attorney or to move to withdraw him as counsel, as might be done pursuant to Rule 24(b) of this Court. The decision was entered within the five-year period authorized by Nebraska law after the dissolution of the taxpayer and pursuant to stipulation signed by a duly authorized attorney for *276 it. The dissolution does not terminate the power of attorney contract in the absence of a provision to that effect. See Chestnut v. Master Laboratories, 148 Neb. 378, 27 N.W. 2d 541 (1947). The decision is valid. Brooks v. Driscoll, 114 F. 2d 426 (C.A. 3, 1940). The petitioner next contends that the statutory period of limitations has run and assessment of the deficiency is barred, both as to liability as a transferee and liability as transferee of a transferee. The return of Truck for 1952 was required to be filed by March 15, 1953. Section 275(a) of the Internal Revenue Code of 1939[2] *279 provides a statutory period of limitations upon assessment of three years from the due date of a timely-filed return. The deficiency letter to Truck was mailed December 12, 1955. At that time there remained unexpired three months and three days of the original period. Pursuant to section 277 of the 1939 Code, [3] the running of the period of limitations was suspended from December 12, 1955, until the decision of the Tax Court became final and for sixty days thereafter. The decision was entered on November 14, 1960. It became final three months later, on February 14, 1961. Sections 7481 and 7483, Internal Revenue Code of 1954. *277 Sixty days thereafter extends the period of suspension to April 15, 1961. After the period of suspension ended, the running of the statutory period resumes. Olds & Whipple, Inc. v. United States, 86 Ct. Cl. 705 (1938), 22 F. Supp. 809; Aura Grimes Bales, 22 T.C. 355 (1954); Brooks v. Driscoll, supra.The running of the period for three months and three days remaining of the original three-year period for assessment extended to July 18, 1961, the time within which the respondent could proceed against the taxpayer, Truck. Pursuant to section 311(b)(1) of the 1939 Code, the respondent had one year more, or until July 18, 1962, within which to proceed against a transferee of Truck, and an additional year, or until July 18, 1963, to proceed against a transferee of a transferee of Truck, which petitioner alleges it is. The notice to petitioner in that capacity was mailed July 15, 1963, and is timely. Also, during the first of these two years a consent agreement was signed by the petitioner on October 18, 1961, and by the respondent's representative, extending to June 30, 1962, the time within which the liability of the petitioner, as transferee, might be assessed or a deficiency notice *278 mailed. Within such period a further consent was executed by both parties extending the period to October 31, 1962. The first notice of transferee liability was sent on October 2, 1962, which was within this period. Both consents were subject to the condition that the statute of limitations had not run as of October 9, 1961. As pointed out above, the respondent had until July 18, 1962, within which to act against a transferee. Therefore, the condition was met and the notice of October 2, 1962, is timely. It operated to suspend the running of the statutory period of limitations during the pendency of the first of these proceedings. Section 6503(a), Internal Revenue Code of 1954. [4] *280 Therefore, the second notice sent in July 1963 to the petitioner as transferee of a transferee of Truck is also timely. The statute of limitations is not a bar to either of the deficiency notices here involved. The petitioner concedes that it is a transferee of Freight and that Freight is a transferee of Truck, but contends that respondent has failed to prove that the assets it received had a fair market value in excess of the consideration it paid. The valuations of some of the assets transferred and liabilities assumed are stipulated. The petitioner argues that on the transfer from Truck to Freight the value of the liabilities assumed was greater than the value of the assets received; that the value of the assets was $730,419.09, and liabilities of $234,069.09 were assumed, but loans of $520,065 were also assumed in order to pay the purchase price; and that on the transfer from Freight to Lines, liabilities of $1,318,332.84 were assumed, and the assets received had a fair market value of $976,750.54 except for franchises and intangibles and accounts receivable. While franchises and intangibles had *281 a book value of $150,167.07, petitioner contends that they were carried at this figure upon insistence of the ICC and that their fair market value was not over $50,000. The accounts receivable had a book value of $242,220.47, but petitioner contends that the fair market value was not over $135,159.02. Some testimony was introduced to support these estimates, but we do not find it persuasive. In the agreement whereby Freight contracted to purchase all the stock of Truck from Joe Bos and Lydia Bos it was stipulated that all liabilities of Truck, known or unknown, would continue to be Truck's liabilities and without recourse upon the sellers. When Truck was dissolved, its assets were taken by Freight and its liabilities were assumed. Also, when Freight was dissolved its assets were taken by the petitioner which necessarily assumed the liabilities, known or unknown. This transfer was reported in the return for 1957 as a reorganization under section 368(a)(1)(F), Internal Revenue Code of 1954, which defines "reorganization" as including a mere change in identity, form, or place of organization. One of the liabilities of Truck so assumed by Freight and later by the petitioner was the liability *282 for additional income tax for 1952, then the subject of a proceeding pending in this Court. As a general rule, a surviving corporation is liable at law for the debts and liabilities of its predecessor corporation where there is a merger or consolidation or where it is merely a continuation of the predecessor. West Texas Refining & D. Co. v. Commissioner, 68 F. 2d 77 (C.A. 10, 1933). And where there is transferee liability at law, the respondent is not obliged to prove the value of the assets transferred. Kamen Soap Products Co. v. Commissioner, 230 F. 2d 565 (C.A. 2, 1956); Turnbull, Inc., 42 T.C. 582 (1964). In any event, the respondent has proved the transfer of assets of a value sufficient to cover the deficiency and interest thereon. The transfer of assets from Truck to Freight involved assets of a stipulated value of $730,419.09 and liabilities of $234,069.09, a net value of $496,350, far in excess of the tax deficiency and interest thereon. The transfer of assets from Freight to Lines involved assets of a book value of $1,369,138.08 and liabilities assumed, other than that of the $350,000 subordinate mortgage to Joe Bos and Lydia Bos, of $968,332.84, or a net value of $400,805.24, *283 far in excess of the tax deficiency and interest thereon. These assets included those acquired from Truck, or others acquired with proceeds of such assets. Where, as here, assets are transferred from a first corporation to a second and later to a third, the first and second having been dissolved, the third corporation's liability for the unpaid taxes of the first extends to the value of the assets originally owned by the first which have been acquired from the second by the third. Atlas Plywood Co., 17 B.T.A. 156 (1929); Continental Oil Co. v. United States, 14 F. Supp. 533 (Ct. Cl., 1936). The net value of the assets transferred from Truck to Freight was stipulated to be $496,350, and all these, or others acquired with their proceeds, were transferred to Lines by Freight. The petitioner contends that the $350,000 obligation to Joe and Lydia Bos should be offset against this, but that obligation was not a liability of the transferor. It does not enter into the valuation of the assets transferred from Truck. It was a separate debt incurred by Freight. The petitioner also contends that the franchises and accounts receivable were worth far less than the book value. The balance sheets *284 contained in the return for 1957 show no reserve for bad debts, and the deductions claimed included an item of $12,888.48 for uncollectible revenue. There is not sufficient evidence to show that the franchises or the accounts receivable were substantially below book value as petitioner alleges. In our opinion the value of the assets transferred from Truck to Freight and then to Lines was clearly adequate to cover the deficiency and interest thereon. The petitioner contends that it elected to apply the provisions of section 99 of the Technical Amendments Act of 1958, 72 Stat. 1673 (Sept. 2, 1958), with respect to the award from the Motor Carrier Claims Commission received by Truck. In 1944 the Government, as a war emergency measure, seized several trucking lines and operated them from August 11, 1944, until sometime in 1945. After the war, claims for compensation to the owners were settled by payments awarded by the Motor Carrier Claims Commission in 1952. Truck and Freight were among the trucking lines so seized, and each received an award of compensation in 1952. Section 99 of the Technical Amendments Act of 1958 permitted a taxpayer who had received such an award of compensation *285 to elect to treat the amount as income received in the years when the transportation system was in the possession or control of the United States instead of as income in 1952. The election was required to be made within one year after September 2, 1958, and in accordance with regulations to be prescribed. Such regulations were published August 8, 1959, in T.D. 6405, 1959-2 C.B. 470. See Walter Petersen, 38 T.C. 137 (1962). The regulations required the filing of amended returns for the taxable years to which the income was to be attributed and a statement showing the total amount received, the period of Government control, and the amount applicable to each taxable year. The petitioner made an election in accordance with this provision, stating the amount of the award as $40,744.63 and the period of Government control as August 11, 1944, to October 23, 1945. The petitioner asked the district director at Des Moines for copies of Truck's returns for 1943, 1944, and 1945 and was informed that the director's office had no record of any such returns. Such returns for 1944 and 1945 were in existence, and copies were furnished to petitioner in 1963. The returns are not in evidence, and the *286 district director's failure to furnish copies in 1959 is not explained. The petitioner contends that the election it made in 1959 was, or should be, effective with respect to any liability it may have for taxes upon the award received in 1952 by Truck. The respondent says that since Truck was dissolved in April 1957 and A. H. Bos and Isabelle C. Bos were designated as the persons to manage its affairs, these individuals had authority in 1959, within the five-year period allowed under Nebraska law for winding up the affairs of the corporation, to make such an election for Truck, and Lines had no such authority. The election made by Lines was intended to relate to the award received by Freight. It states the amount received, which was less than the amount awarded to Truck, and states the period of Government control of Freight, but not the period of Government control of Truck. The principal witness for the petitioner, Gerald Mattox, who was vice president of Lines in 1959 and 1960, testified that he had no knowledge until December 1960 of the pending Tax Court proceeding involving Truck. He signed the election filed with the district director. There is no evidence that this election *287 was intended to be effective with reference to the award received by Truck. Since no such election was made prior to September 2, 1959, by or on behalf of Truck, there is no authority for invoking the provisions of the aforementioned section 99 at this time with respect to that award. The respondent contends that the petitioner is liable for interest on the amount of the deficiency from March 15, 1953, the due date of the corporation income tax return of Truck for 1952. The petitioner contends that if it is liable for the deficiency in tax it is not liable for interest thereon for any period prior to the statutory notice issued to the petitioner in one or the other of these proceedings, October 2, 1962, or July 15, 1963. Petitioner points out that the respondent seeks to collect interest for a period prior to the time it came into possession of the assets transferred. Petitioner cites several cases, the most recent of which is Estate of Samuel Stein, 37 T.C. 945 (1962). In that case it was held that the transferee was liable for interest from the date of the transfer of the property. That case involved transferred assets insufficient to cover the transferor's total liability and *288 we held that interest could be charged to the transferee only for the use of the transferred assets. The situation was similar in the other cases cited by the petitioner. [5]
In Leo L. Lowy, 35 T.C. 393 (1960), we considered a case in which the value of the transferred assets was in excess of the deficiencies in tax, together with interest. We there held that interest ran on the deficiencies from the due dates of the returns. In the present case the value of the transferred assets is sufficient to cover the deficiency plus interest and, following Lowy, we hold that interest runs from March 15, 1953. The petitioner concedes that it is a transferee of a transferee, but denies that it is liable as a transferee, of Truck. It contends strenuously that the determination in 1962 that it is liable as a transferee is invalid and of no effect. It so contended at a hearing in May 1963 on respondent's motion to strike the petitioner's amended reply in Docket No. 4778-62, which motion was denied. Thereafter, the respondent issued a deficiency *289 letter to petitioner as transferee of a transferee, resulting in the proceeding in Docket No. 4404-63. Since the decision in the case can be entered in the latter proceeding where the status is conceded, the distinction sought to be made is not vital here, but we may observe that in our opinion the attempt of the petitioner to make a distinction on this point is equivocation. If the respondent has traced the assets once owned by the taxpayer and now owned by the person to whom the deficiency notice is addressed, it is not required that every step in the transfer or transfers be correctly evaluated as to its legal effect. [6] *290 This identification may be necessary if and when the additional one-year period of the statute of limitations in the case of a second transfer is involved, but when the addressee receives notice of liability for the deficiency of the taxpayer it is not material whether the respondent has labeled the liability as that of transferee or of transferee of a transferee. Here the petitioner is aware that it is in possession of assets transferred originally from Truck and that the deficiency notice charges it with liability for unpaid taxes of Truck. This is sufficient. The respondent is entitled to collect the deficiency and interest once, and in our view the decision may be entered in either docket number. The parties may be able to agree on this. Accordingly, Decisions will be entered under Rule 50. Footnotes
1. SEC. 311. TRANSFERRED ASSETS. (a) Method of Collection. - The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter * * *: (1) Transferees. - The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter. * * *
Any such liability may be either as to the amount of tax shown on the return or as to any deficiency in tax. (b) Period of Limitation. - The period of limitation for assessment of any such liability of a transferee * * * shall be as follows: (1) In the case of the liability of an initial transferee of the property of the taxpayer, - within one year after the expiration of the period of limitation for assessment against the taxpayer; (2) In the case of the liability of a transferee of a transferee of the property of the taxpayer, - within one year after the expiration of the period of limitation for assessment against the preceding transferee, but only if within three years after the expiration of the period of limitation for assessment against the taxpayer; - * * *↩
2. SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. Except as provided in section 276 - (a) General Rule. - The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period. 3. SEC. 277. SUSPENSION OF RUNNING OF STATUTE. The running of the statute of limitations provided in section 275 or 276↩ on the making of assessments and the beginning of distraint or a proceeding in court for collection, in respect of any deficiency, shall (after the mailing of a notice under section 272(a)) be suspended for the period during which the Commissioner is prohibited from making the assessment or beginning distraint or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Board, until the decision of the Board becomes final), and for sixty days thereafter. 4. SEC. 6503. SUSPENSION OF RUNNING OF PERIOD OF LIMITATION. (a) Issuance of Statutory Notice of Deficiency. - (1) General Rule. - The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or the collection by levy or a proceeding in court, in respect of any deficiency as defined in section 6211 (relating to income, estate, and gift taxes), shall (after the mailing of a notice under section 6212(a)) be suspended for the period during which the Secretary or his delegate is prohibited from making the assessment or from collecting by levy or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final), and for 60 days thereafter.
5. Patterson v. Sims, 281 F. 2d 577 (C.A. 5, 1960); Voss v. Wiseman, 234 F. 2d 237 (C.A. 10, 1956); Pallister v. United States, 182 F. Supp. 720↩ (D.C.N.Y., 1960).
6. Some of the technical difficulties confronting the respondent are illustrated in Turnbull, Inc., supra, at 585; Continental Oil Co. v. Helvering, 100 F. 2d 101, 108 (C.A.D.C. 1938); California Iron Yards Corp. v. Commissioner, 82 F. 2d 776 (C.A. 9, 1936); and Shepard v. Commissioner, 101 F. 2d 595↩ (C.A. 7, 1939).