**ZAUNBRECHER v. TRIM.**

No. 8401.

Court of Civil Appeals of Texas. San Antonio.
April 2, 1930.

Rehearing Denied May 14, 1930.

Appellant's Motion for Rehearing Granted July 16, 1930.

Appellee's Motion for Rehearing Overruled Oct. 8, 1930.

**840**

Harry G. Hart, W. B. Jack Ball, and John A. Cox, all of San Antonio, for appellant.

Joe W. Caldwell, Jr., of Asherton, for appellee.

## COBBS, J.

Appellee sued appellant for damages for the breach of a contract to drill a water well, and for compensation for extra work and labor alleged to have been furnished at appellant's request after the completion of the well under the contract. The petition was amended and the case went to trial on three counts: First, for recovery of $5,250 for drilling the well to the "bottom of the Carrizo Artesian Water Bearing Sand," an alleged depth of 1,400 feet, properly casing the same, and completing said well in full compliance with the terms of the contract; and alleging the breach of the contract by appellant's failure and refusal to pay all or any part of the contract price. The second count was for the recovery of $1,000, alleged value of labor performed by appellee for appellant's benefit at his request after the completion of the well through the Carrizo sands; said labor being for installing a perforated liner from the top to the bottom of said Carrizo sands, and drilling through said liner a reduced hole from the bottom of said sands a depth of 69 feet, alleging failure of appellant to pay said $1,000 or any part thereof. The third count alleged the filing of a mechanic's lien, but the count was abandoned, no evidence being offered in support of it.

Appellant's answer contained, first, a general denial; second, a special answer admitting the execution of the contract, and denying performance by appellee of specific provisions of said contract alleged to be material; (a) representations of plaintiff in regard to possessing tools and equipment adapted to the work, particularly as to drilling the well "in the least possible time," and within the time contemplated by the parties, which required the completion of the well in time to irrigate crops to be grown during the winter and spring of 1927–1928; (b) failure to properly set casing at top of water-bearing sands; (c) failure to drill said well in the least possible time; (d) failure to case off any and all salt water encountered, thereby rendering the water furnished by the well unfit for purposes and uses contemplated by the parties to the contract; third, denying that the labor of installing the perforated liner and drilling 69 feet below the Carrizo sands was done for the benefit of defendant, but as an experiment performed for plaintiff's own benefit, and in an effort to remedy defects resulting from unskillful and unworkmanlike methods employed prior to the experiment so made; fourth, a cross-action for damages for loss of the crops planted in the fall and winter of 1927–1928, damages for the loss of the use of water for domestic purposes, which uses were within the contemplation of the parties to be supplied through the performance of plaintiff's agreements to complete said well as provided in the contract for drilling said well.

The trial was before a jury, upon whose verdict, rendered in the form of special issues submitted by the court, judgment was rendered for $5,943.85, being $5,508.75 for 1,469 feet of drilling at $3.75 per foot, and $435.10 interest from May 15, 1928, from which judgment appellant appeals.

Appellant filed a lengthy brief, but appellee filed none, and hence we are required to grope through this record to understand the theory of defense.

The purpose of appellee seems to have been to establish the right to recover for drilling 369 feet which demanded $3.75 per foot for 300 feet and $1,000 for the last 69 feet, plus the labor for insertion of the perforated liner, making total extra compensation in the sum of $2,381.75. We think the pleading was sufficient to recover the sum. There was a sharp controversy. The court submitted the issue to the jury, who found in favor of appellee. There was testimony that the drilling below the Carrizo spring sands 300 feet was in response to orders of appellant's agents. A conference at this point was called, and drilling was stopped and casing pulled and reset. The cost of the experiment amounted to $1,000. The total cost of these experiments was increased to about $6,508.75, and $2,381.75 in excess of the contract price of the 1,100 foot well, which Trim contracted to drill. We think it is sufficiently shown, the agency. Mr. Trim testified: "Mr. Zaunbrecher told Mr. Kean in my presence that he was to supervise the well, the casing and drilling of this well." We overrule the assignment and propositions Nos. 1 and 2.

█ In regard to the drilling of the second well, Mr. Zaunbrecher had nothing to do with it. Mr. A. J. Knaggs directed that he was acting under the authority of the Catarina Farms Company, located on Mr. Zaunbrecher's property. It was sought to show defendant's dissatisfaction with the Trim well, and his refusal to accept the same was insincere and made for the purpose of escaping payment of the Trim well, because it would never

be needed by the Catarina Farms Company. But the evidence was properly introduced for the purpose of comparison, for the purpose of crediting the contentions of the plaintiff and discrediting contentions of defendant. The testimony was harmless, and the proposition is overruled.

■ Mr. Trim was opposed to drilling the well in any manner different from the contract, and any alteration or change was caused by and on the suggestion of Mr. Kean. It was his purpose to drill as the contract specified. Defendant contended time was the essence of the contract, and plaintiff attempted to show that time was not the essence of the contract, and plaintiff contended that the contract was not completed within the "least possible time" because of the great delay caused by pulling and resetting the casing. The testimony is uncontradicted that great delay was caused, and an issue was presented as to the authority of the plaintiff to so pull and reset the casing which caused the delay. This proposition is overruled.

We do not think there was any error in the court's refusal to give special issue No. 5, requested in regard to the installation of the perforated liner. Mr. Trim testified: "Mr. Zaunbrecher personally insisted that I put that liner in there. Our contract did not call for it. * * * We had gotten about 1300 feet and they insisted that we go deeper, and I said I could not go deeper without a liner. Mr. Zaunbrecher was insisting that I put a liner in the well. That was the instruction his representative gave me. I got my instructions from his representative; I never saw Mr. Zaunbrecher more than half a dozen times, but in my presence he told Mr. Kean to oversee this well and have charge of all the casing, 'and I look to you to supervise this well yourself.' The liner I considered necessary in all these wells down in that country. That, however, was not discussed with me and Mr. Zaunbrecher, because we had not been putting them in the wells before." We think, under the testimony, plaintiff was justified in inserting a liner in the hole, because he had authority to do so by appellant's agents.

We think appellant should be held to answer for drilling necessary to reach the bottom of the Carrizo sands. Trim was authorized to drill, and the jury in this connection found that Kean was authorized by Zaunbrecher to direct Trim to deepen the well. This assignment is overruled.

■■ Trim agreed to case off salt water encountered, and the issue was properly submitted to the jury; certainly admissible under the theory of quantum meruit, and was not required to submit any issue as to domestic uses too. This proposition is overruled.

We do not think there is any merit in appellant's proposition No. 12, and it is overruled.

We do not think there is any error pointed out in proposition No. 13.

■ The right to a recovery for breach of contract is a purely legal right. One of the parties having fully performed his obligation, the legal right of recovery exists for any loss or injury he may have suffered through the default of the other party to the contract, and this notwithstanding such party has derived no real benefit from such performance. Having received the thing for which he bargained, he is legally bound to pay therefor the contract price.

■ A right to recover upon quantum meruit, upon the other hand, is based entirely upon principles of a purely equitable nature, and to entitle one to recover upon such plea he must allege and prove that, notwithstanding his failure or inability to perform his agreements as made, yet the partial performance due to his attempted performance has conferred upon the other party to the contract a substantial benefit exceeding in value any loss he has actually sustained by reason of plaintiff's failure to perform fully his entire undertaking.

■ There can be no intermingling of the causes of action; they are distinct, notwithstanding they may be joined in separate counts in the petition, followed by a prayer for relief according as the one or the other count is sustained by the evidence offered.

■ But, while the courts have been thus liberal in permitting the plaintiff to join these two somewhat inconsistent grounds of relief in the same petition, their liberality does not extend to the length of permitting the plaintiff to plead performance and recover upon an inconsistent cause of action not even pleaded. To do so would deny the defendant the right to answer by admitting such facts as are admittedly true, while denying or disproving other allegations, and deny to him an opportunity to resist an open attack instead of an ambushed or camouflaged onslaught, as would be the case if the suit were based upon allegations of strict performance and recovery sought upon proof of a partial performance, the value of which is not alleged nor the excess of such value above the loss he has suffered by nonperformance or incomplete performance. Hence the validity of objections, both to admission of evidence and the submission of a charge recognizing such nonexistent right as something to which plaintiff is entitled.

We think the pleadings in connection with the facts justify the submission of the issue. We do not think there is any merit in appellant's fourteenth proposition, questioning the issues in the whole submitted and the answers of the jury.

It was shown that the water produced was salty and not good for domestic purposes, but

was good for irrigating purposes. It was shown that the water, though salty, would do for irrigating, and that it was like the water in some of the wells in that district. That the salt would disappear when used for any length of time. That it was not uncommon in that district to encounter some salt in the wells, that would disappear after being used and pumped, and when not used would return.

We have carefully examined appellant's brief, assignments and propositions thereon, and, finding no error assigned that should call for a reversal, they are all overruled, and the judgment is affirmed.

On Appellant's Motion for Rehearing.

SMITH, J.

The contract between the parties required appellee to drill a water well for appellant "to the bottom of the Carrizo Artesian water bearing sand and to a depth of approximately 1,100 feet, more or less," at the price of $3.75 per foot. Appellee's own testimony, undisputed, shows that the bottom of the described sand was reached within the prescribed 1,100 feet. By this process the performance of the contract, as to the depth of the well, was fully completed by appellee when he reached said depth.

For reasons not necessary to discuss here, however, appellee drilled the well to a depth of 1,469 feet, or 369 feet below the depth provided for in the contract. Appellee did not allege or prove any agreement concerning or fixing the amount he was to receive for drilling the additional 369 feet. He sued to recover upon the express contract, alleging that thereunder he drilled the well to the depth of the described sand, that this depth was reached at 1,400 feet, for which he sought to recover $5,250, or $3.75 per foot and for $1,000 extras incurred in drilling the well 69 feet below the depth required in the contract. He did not sue upon the quantum meruit. He recovered $3.75 per foot for the entire 1,469 feet or $5,508.75, with interest.

▪ It is obvious from this statement that the case pleaded did not concur with the case proven. Appellee pleaded that he drilled the well to a depth of 1,400 feet in accordance with the contract, for which, under the terms of the latter, he earned $3.75 per foot, or $5,250. The testimony showed, however, that as to depth the well was completed, within the terms of the contract, at a depth of less than 1,100 feet, which warranted a recovery of only $4,125 by virtue of the contract. There was neither allegation nor proof of the reasonable value of appellee's services in drilling from the 1,100-foot level to the 1,400-foot level, and therefore there was no basis for recovery thereon. With reference to the re-

maining 69 feet appellee expressly alleged that his services in connection therewith were beyond and not contemplated in the contract, and yet he was permitted to recover therefor by virtue of the contract price of $3.75 per foot, applicable only to the first 1,100 feet of the well.

▪ Appellant, a resident of another state, was not present during the drilling operations, and was not personally consulted concerning the drilling of the well below the 1,100-foot level fixed in the contract, or extending it below the Carrizo sand. In anticipation of appellant's absence it was provided in the contract that one Kean should "have the privilege of inspecting all casing to be used in" the well, and that "all casing or materials used in said well shall be approved by said Kean prior to its installation." Kean remained in the vicinity and was available for consultation until the 1,400-foot level was approached in the drilling, but not thereafter. Appellee claims that Kean authorized the extension of the well below the 1,400-foot level, and all the expense incurred in the operations, and that appellant was bound by his acts, which were obviously beyond the authority given him in the contract. It is undisputed that Kean left the vicinity, was not available for consultation, and was not consulted about the later operations, which were not contemplated or provided for in the contract, and, even if his authority to bind appellant could be extended beyond that expressed in the contract, it could not be invoked to warrant the operations below the 1,400-foot level, for he was not consulted and knew nothing of those operations. It is apparent from the record that those last operations, if not all those below the 1,100-foot level, were performed without the knowledge or consent of appellant or any one authorized to act for him; that they resulted from the desire of appellee and the agents of the Catarina Farms Company to experiment with the water strata in that vicinity. Testimony of the acts and instructions of these agents was improperly admitted, over timely objections of appellant.

▪ Appellee obligated himself to drill the well to the required depth "as soon as possible" and with due diligence, but the evidence indicates that he did not comply with this obligation, and therefore breached the very contract he seeks to specifically enforce in this action. Appellant claims that he was damaged by this admitted breach, and the questions of delay and consequent injury to him should have been submitted to the jury under appropriate instructions and special issues.

We conclude upon rehearing that for the reasons discussed, as well perhaps as for other reasons not necessary to discuss, appellant is

entitled to another trial; wherefore his motion for rehearing is granted, and the judgment will be reversed, and the cause remanded.

COBBS, J.

I do not concur in this opinion.

### On Appellee's Motion for Rehearing.

In his motion for rehearing appellee says: "For reasons, unnecessary to discuss at this time, the appellee has been before this Honorable Court without having a brief to assist the court in their determination of the case. This is probably the reason that this Honorable Court predicated their reversal of the case upon certain findings wholly unsupported by the record. The appellant's brief consistently and repeatedly misstated the record and what would be found in the record of this case and it is obvious that the Court of Civil Appeals was misled by these statements, which, upon investigation, will be found to be erroneous."

The case was originally presented to this court in an exhaustive brief by appellant, to which appellee made no reply. Upon affirmance of the judgment appellant again thoroughly briefed the case in his motion for rehearing, which appellee also saw fit not to contest. In his brief and motion appellant stated the facts of the case in detail, with copious extracts from the evidence in the record, and, after thorough reconsideration, this court set aside the judgment of affirmance and reversed the judgment and remanded the cause. And now in his motion for rehearing appellee asserts that the statements made in appellant's brief and motion were not supported by, but were contrary to, the record, and complains that this court was misled by those statements. This assertion and complaint come too late, they were waived by appellee's failure to file any brief upon the original submission or contest appellant's motion for rehearing, or otherwise appear in the appeal. Courts of Civil Appeals Rule 31; West Texas Utilities Co. v. Pennington (Tex. Civ. App.) 11 S.W.(2d) 583; Panhandle Motors Co. v. Foster (Tex. Civ. App.) 245 S. W. 269; Marshburn v. Stewart (Tex. Civ. App.) 295 S. W. 679; Hartford Fire Ins. Co. v. Owens (Tex. Civ. App.) 272 S. W. 611; Lancaster v. Norris (Tex. Civ. App.) 271 S. W. 401; Daniels v. Franklin (Tex. Civ. App.) 233 S. W. 380. It is proper to add that this court thoroughly reviewed the record and reached the conclusion that appellant correctly stated and construed the facts. It was upon this conclusion in the final analysis that the judgment was reversed.

Appellee's motion for rehearing is accordingly overruled.