TEXAS WESTERN FINANCIAL CORPORATION

v.

McCRAW CANDIES, INC., et al.

Civ. A. No. 3–3741–C.

United States District Court,
N. D. Texas,
Dallas Division.

June 13, 1972.

---

John H. Greenfield, Jr., Dallas, Tex., for plaintiff.

Stanley M. Kaufman, Oster & Kaufman, James S. Mahon, Mahon, Fitzgerald & Winston, Eldon B. Mahon, U. S. Atty., Charles D. Cabaniss, Asst. U. S. Atty., Dallas, Tex., for defendants.

## MEMORANDUM ORDER AND OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

This is an interpleader action instituted by Texas Western Financial Corporation to determine the claims asserted herein by the defendants to the sum of

$3,077.76 which was being held by Texas Western prior to its deposit in this Court. Plaintiff's original petition was filed in the 116th Judicial District Court in Dallas County, Texas. The suit was removed on the motion of the United States of America and is now properly before this Court.

A history of the transactions leading up to the commencement of this suit is set out below. During the period August 29, 1965, through December 30, 1965, Defendant McCraw Candies, Inc. (McCraw) and Larco Engineering, Inc. (Larco) participated in negotiations which culminated in an oral agreement by which Larco agreed to design, fabricate, install and sell to McCraw a taffy candy wrapping machine. In return McCraw agreed to pay the sum of $8,976.[1]

The only written record of the agreement is contained in a handwritten notation on a drawing of the machine.[2] The notation states as follows:

> This unit to operate at 120 units per minute minimum. Total price $8,976.-00 Larco Engineering 8/29/65.

The drawing illustrates the function which the machine was designed to perform, i. e., wrap pieces of candy, seal the wrapper lengthwise and seal the wrapper ends cross-wise.

In conjunction with the agreement, McCraw executed a note on February 15, 1966, in which it promised to pay Larco the sum of $7,268.40 in thirty-six (36) monthly installments. On the same date McCraw executed a chattel mortgage. Larco subsequently sold the note to Texas Western and assigned the chattel mortgage to it. The note was purchased after Texas Western received a letter from McCraw acknowledging "receipt in good condition and satisfactory installation of the goods and chattels covered by Chattel Mortgage, dated February 1966." McCraw further stated in the letter that "Said equipment is satisfactory, accepted by us and approved for payment by you."[3]

Despite this acknowledgment there were in fact some modifications which were needed to complete the machine. This fact was communicated to Texas Western by Larco on March 15, 1966. On March 16, 1966, McCraw again expressed its satisfaction and approval of the equipment after having inspected it.[4] On March 18, 1966, shortly after receiving these two letters, Texas Western disbursed $3,077.76 to Larco and retained $3,077.76 which was to be disbursed when the machine was completely operational.

During the latter part of February 1966, the machine was operational. However, the degree of completion is in dispute. Both Mr. Cook and Mr. Holden, President and Design Engineer respectively for Larco, testified that the machine was performing 90% of the functions for which it was designed. On the other hand Mr. Jensen of McCraw testified that the machine was only 66⅔% operational.[5] The evidence shows that by late February of 1966, the machine was satisfactorily performing the functions of wrapping the candy and sealing the wrapper lengthwise at a rate in excess of 120 units per minute. The only function which the machine was not performing satisfactorily was the crosswise sealing of the ends of the candy wrapper. Mr. Holden testified that the failure of the machine to cross seal the wrapper ends was caused by operating the machine in excess of 120 units per minute. Operating the machine in excess of 120 units per minute would cause a break in the circuit. The machine was designed to seal the wrappers cross-wise through the application of heat. Al-

---

1. *See* Ex. 1–3. Added to the sales price was a sales tax of $179.52 and a finance charge of $1112.88. A cash down payment of $3000 was deducted from the total, leaving a balance of $7268.40.

2. *See* Ex. 9.

3. *See* Ex. 4.

4. *See* Ex. 6.

5. This estimate was apparently based on his opinion that the cross sealer was the "guts or essence" of the contract.

though the cross bar sealer did not seal the ends properly, McCraw did achieve a modicum of success by means of pressure from the cross sealer bar. Larco made almost daily visits to McCraw's plant from December 27, 1965 to February 18, 1966 in an attempt to achieve 100% efficiency. However, because of increasing financial difficulties Larco made the decision to concentrate on completing its larger contracts and, therefore, did not do any further work on the machine.

On November 17, 1967, Larco filed a voluntary petition in bankruptcy under Chapter XI of the Bankruptcy Act. In the subsequent bankruptcy proceeding McCraw was not scheduled as a creditor of Larco. In addition McCraw did not receive notice of the pending proceeding or notification from the Referee or Trustee that the contract between Larco and McCraw was accepted or rejected. Likewise, Texas Western was not notified of the pendency of the suit nor was it requested to turn over the funds held by it to the Trustee.[6] The failure to include these parties in the bankruptcy proceeding is easily explainable.

Cook testified that the contract was not listed as an asset on the bankruptcy schedule because, prior to the bankruptcy proceedings, he had instructed the bookkeeper to strike the account from the books. The failure to include the asset in the schedule and have it listed on Larco's business records prevented the Trustee from knowing of the existence of the contract and, therefore, deprived him of the opportunity to accept or reject it.

In bankruptcy proceeding No. BK 3–911, the United States of America (Government), acting by and through its agency, the Internal Revenue Service (IRS), participated and filed proof of claims totaling $99,422.71 for withholding and F.I.C.A. taxes assessed against Larco. The Government did not object to the order approving the Trustee's fi-

nal accounting and discharging the Trustee. Pursuant to the order the Government received payments totaling $38,680.18 which were to be applied on its tax claims. After crediting this amount there remained a balance in excess of $60,000. These claims were not discharged in the proceeding due to their age.

On February 25, 1970, Texas Western filed this interpleader action.

In the present action McCraw contends it is entitled to the amount in dispute because Larco is guilty of breach of contract by not completing the machine. There is no question concerning McCraw's fulfillment of its part of the agreement. On the other hand, the Government asserts a right to the funds by virtue of the outstanding taxes owed by Larco which have not been satisfied. It argues that Larco should be entitled to the majority of the interpleaded funds on the theory of quantum meruit. The Government further argues that because of its tax liens it has priority to the monies which Larco should receive.

Larco was named as a party defendant but chose not to answer or assert a claim.

The threshold question this Court must decide is whether Larco can recover for partial performance of the contract after voluntarily abandoning work on the machine before it was completed. The rule prevailing in many jurisdictions is that a party to an entire and indivisible contract who fails to fully perform his part of the agreement cannot recover on the contract or on a quantum meruit basis. *See* 17 Am.Jur. 2d § 380. However, some jurisdictions have taken an opposite view and allow recovery on the theory of quantum meruit for the reasonable value of the benefit which was conferred upon the other party. Texas adheres to the second view.[7] In order to recover the party must show that the partial performance

---

6. These facts were stipulated by the parties.

7. Ardoin v. Royden, 326 S.W.2d 14 (Tex. Civ.App.–Ft. Worth 1959) ; Zaunbrecher v. Trim, 31 S.W.2d 839 (Tex.Civ.App.– Amarillo 1930) ; 13 Tex.Jur.2d § 304.

was of benefit to the other party or was accepted by the other party.

██ The evidence presented in this case affirmatively shows that both of these prerequisites were fulfilled. First, there is no question but that the machine benefited McCraw. The machine performed at a far greater speed all of the functions previously performed by eight McCraw employees. Secondly, the evidence clearly shows the machine was accepted by McCraw. Evidence of acceptance can be gleaned from the two letters transmitted by McCraw to Texas Western. Further evidence of acceptance is found in the mutual agreement by officers of McCraw and Larco to allow McCraw to operate one full season before the final modifications were to be completed. It is undisputed that Mc-Craw has continued to use the machine in its business.[8] After finding that McCraw accepted the machine and benefited from its acceptance, the Court must determine the value of the benefit conferred.

██ In a suit based on quantum meruit a party is entitled to receive the value of the benefit conferred on the other party, less the damages suffered by the other party due to the failure to fully perform the contract.[9] The recovery, however, cannot exceed the contract price.

██ After reviewing and considering the conflicting evidence regarding the extent of completion, the Court concludes that the machine manufactured by Larco was performing 90% of its intended functions when Larco ceased work. The Court further finds that McCraw has received a benefit equal to 90% of the contract price.

██ McCraw relies on 11 U.S.C. § 110b in urging this Court to find that the trustee in the prior bankruptcy proceeding rejected the contract between McCraw and Larco. Title 11, United States Code, § 110b provides in pertinent part:

> Within sixty days after the adjudication, the trustee shall assume or reject any executory contract, including unexpired leases of real property: Provided, however, That the court may for cause shown extend or reduce such period of time. Any such contract or lease not assumed or rejected within such time, whether or not a trustee has been appointed or has qualified, shall be deemed to be rejected.

The evidence shows the trustee was not aware of the claim possessed by Larco because the transaction had been deleted from Larco's business records and was not listed as an asset on the schedule. There has been no evidence presented showing that the trustee had knowledge of the claim or could have obtained it. In light of the circumstances, this Court finds that the trustee cannot be deemed to have rejected the contract. *See* Archer-Daniels-Midland Company v. Paull, 188 F.Supp. 277 (W.D.Ark. 1960), reversed 8 Cir., 293 F.2d 389, on remand 199 F.Supp 319, affirmed 313 F.2d 612; 4 Collier on Bankruptcy, Sec. 70.28. Although the claim was not listed on the schedule, the possible rights under the contract vested in the trustee on the date the petition was filed. 4 Collier on Bankruptcy, Sec. 70.07; Garrett v. Garrett, 124 Tex. 330, 78 S.W.2d 157; 8 C. J.S. Bankruptcy § 195 (1962).

██ When, as in this case, unadministered assets are discovered after the bankrupt estate has been closed and the trustee discharged, there exists a ground for reopening the bankrupt estate. In re Stein, 111 F.Supp. 327 (D.C. N.Y.1953); Danciger v. Smith, 286 S. W. 633 (Tex.Civ.App.1926), affirmed 276 U.S. 542, 48 S.Ct. 344, 72 L.Ed. 691 (1926). The decision of whether or not to reopen an estate rests in the sound discretion of the trial court. In re Hak-

---

8. Testimony elicited at trial reveals the machine presently operates at approximately 400 units per minute. The current operating speed was accomplished through modification made by McCraw.

9. Benson v. Harrell, 324 S.W.2d 620 (Tex. Civ.App.–Ft. Worth 1959); San Augustine Independent School District v. Freelove, 195 S.W.2d 175 (Tex.Civ.App.– Beaumont 1946).

er, 411 F.2d 568 (5th Cir. 1969). It must be noted that in this case neither the government nor McCraw desire the bankrupt estate to be reopened. In view of the small amount involved in this case, it would not appear practical to reopen the estate. Because the payment of expenses incurred in reopening the estate, appointing a trustee and administering the assets would leave very little money to disburse to creditors, it appears that, in the interest of justice, this Court should resolve the claims to the interpleaded fund without reopening the estate.

In the event the estate is not reopened the unadministered assets should revert to the bankrupt. However, in this case the bankrupt does not assert a right to the interpleaded funds. Because of the nature of this suit, it is incumbent upon the Court to determine the rightful owner to the interpleaded fund.

The government asserts priority to that part of the fund belonging to Larco. This claim is based on tax liens filed against Larco for failure to pay withholding and Federal Insurance Contribution Act taxes.[10] Section 6321, Title 26, U.S.C., provides that

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

It is well established that the phrase "property or rights to property" used in Section 6321 includes choses-in-action. Citizens State Bank of Barstow, Texas v. Vidal, 114 F.2d 380 (10th Cir.

1940). In *Citizens State Bank of Barstow* the Court stated that

> The evidence of debt for labor, work and materials furnished was subject to ownership, (the Bank claims ownership): it was subject to transfer, (it was transferred), and exclusive possession and enjoyment and may be brought within the dominion and control of a court, through some recognized process (it is the subject matter of the controversy here). Under well recognized authority these are the essential ingredients of "property" where value is the test.

114 F.2d at 383.

In the present case Larco had a claim against McCraw for the value of the labor and materials which went into the manufacture of the candy machine. Being a chose-in-action it was subject to the tax liens filed by the government.

This Court finds that the government possesses valid tax liens against Larco and, therefore, pursuant to Section 6323, Title 26, U.S.C., is entitled to priority over "property or rights to property" owned by it.

It was previously determined by the Court that Larco was entitled to receive 90% of the contract price. Converted into dollars and cents Larco would be entitled to receive $2,051.00 of the interpleaded fund. Consistent with this Opinion, the amount of $2,051.00 should be awarded to the government.

Regarding the remainder of the fund, Texas Western, as an innocent stakeholder in an interpleader suit, is entitled to receive $750.00 for attorney fees incurred in initiating this suit. *See* United States v. Ray Thomas Gravel Co., 380 S.W.2d 576 (Tex. 1964). The balance of the fund, i. e., $276.76, should be disbursed to McCraw.

10. The IRS made assessments for unpaid withholding and F.I.C.A. taxes for the third quarter of 1967 in the amount of $47,272.34. Notice and demand for payment were made on December 22, 1967, and notice of the federal tax liens was subsequently filed on February 23, 1968, in Dallas County, Texas. Additional assessments for unpaid withholding and F.I.C.A. taxes were made against Larco for the fourth quarter of 1967. On March 8, 1968, notice and demand for payment was given Larco. Notice of tax liens was filed on March 3, 1968. The outstanding obligations for the third and fourth quarters total $58,076.42 exclusive of interest. *See* Ex. 10–12.