In re Michael A. ZUNIGA, Debtor.

**Robert W. Strohbeck and Gina M. Strohbeck, Plaintiffs,**

v.

**Michael Antoinette Zuniga and Robert J. Blackwell, Trustee, Defendants.**

**Bankruptcy No. 99–51092–293. Adversary No. 01–4015–293.**

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

Aug. 10, 2001.

Maryanne Newman, Clayton, MO, for Plaintiffs.

Lloyd M. Nolan, Clayton, MO, for Debtor.

Robert J. Blackwell, O'Fallon, MO, trustee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

Debtor Michael Antoinette Zuniga entered into a contract to purchase Plaintiffs Robert and Gina Strohbeck's house. After the contract was signed but before closing Zuniga filed for bankruptcy relief under Chapter 7. Zuniga was unable to obtain financing and consequently did not purchase the Strohbeck's house. The Strohbecks seek a ruling from the Court that their breach of contract claim against Zuniga is not subject to discharge. The Court finds that any debt which was incurred due to Zuniga's alleged breach of the real estate contract arose post-petition and is therefore not subject to discharge.

### Jurisdiction and Venue

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01 of the United States District Court for the Eastern District of Missouri. This is a "core proceed-

ing" pursuant to 28 U.S.C. § 157(b)(2)(I), which the Court may hear and determine.

### Procedural Background

On October 18, 1999, Debtor Michael Antoinette Zuniga filed a voluntary petition seeking relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1330. An order discharging Debtor was entered on January 25, 2000.

Plaintiffs Robert and Gina Strohbeck filed this adversary complaint on January 24, 2001. Two counts of the three count complaint were dismissed on April 17, 2001. The remaining count of the complaint is now before the Court upon a joint stipulation of the parties to submit the case upon stipulated facts and their legal briefs. The parties have stipulated that the sole issue for determination by the Court is whether Plaintiffs' claim damages for Zuniga's alleged breach of contract is a post-petition claim not subject to discharge.

### Findings of Fact

The parties have filed the following stipulated facts which the Court has reviewed and hereby adopts as true:

1. On October 6, 1999, Plaintiffs Strohbeck entered into a Residential Real Estate Sale Contract ("Sale Contract") for the sale of their house located at 5201 Bay Pointe Dr. ("real estate") to Debtor Zuniga for $128,900.00.

2. Debtor Zuniga paid earnest money under the contract in the amount of $500.00.

3. Under the terms of the contract, Debtor Zuniga was to obtain a loan for the maximum loan to value amount obtainable and Plaintiffs Strohbeck were to finance $12,900.00 of the purchase price.

4. Debtor Zuniga, acting by and on the advice of her loan agent/loan officer, Terrence Green ("Green"), applied for a loan with a commercial lender, EquiCredit Corporation.

5. The loan applied for was in excess of $103,000.00.

6. Debtor Zuniga was also acting upon advice of her real estate agent, Crystal Jimmerson–Wright ("Wright") of ReMax Cornerstone Realtors, who is Green's sister.

7. Debtor Zuniga disclosed to Green and Wright that she intended to file bankruptcy, and they represented to her that this would not be a problem in connection with buying a home or getting a home loan.

8. In connection with the loan application, false supporting documentation was provided to EquiCredit Corporation ("EquiCredit") by Green. Debtor testified at her deposition that this documentation was inaccurate and was submitted without her knowledge.

9. Such false documents showed that the Debtor had been employed by her employer for longer than she had, that her income was greater than it was and that she had in excess of $14,000.00 in assets in a bank account.

10. Over a period of time prior to the time set for closing, which was October 21, 1999, additional amounts of purchase money were deposited in the name of or on behalf of Debtor Zuniga with Metropolitan Title Company ("Metropolitan"), the escrow closing agent.

11. By the time of closing on October 21, 2001, such funds amounted to about $14,000.00. Debtor testified at her deposition that she had paid $500.00 as an earnest deposit, she personally brought $500.00 to closing, and that she believed that the remaining $13,000.00 or so was not her money.

12. On October 18, 1999, Debtor Zuniga filed her Chapter 7 Bankruptcy Petition.

13. Debtor Zuniga did not disclose to her then-attorney, Christi Fingal, or to the Bankruptcy Trustee the Sale Contract, any equitable interest in the real estate, or the approximate $14,000.00 earnest money, the down payment at any time during the pendency of her bankruptcy or the existence of the Strohbecks.

14. On October 21, 1999, Plaintiffs Strohbeck and Debtor Zuniga proceeded to close on the real estate.

15. At closing, Debtor Zuniga executed numerous documents verifying employment and income information that had previously been submitted to the lender.

16. In addition, at closing Debtor Zuniga executed a document representing that she had never filed Bankruptcy.

17. At closing, Debtor Zuniga also executed various loan documents, including Deeds of Trust and notes to EquiCredit and Plaintiffs Strohbeck.

18. At some time after the closing, EquiCredit authorized the approximately $103,000.00 in loan funds to be disbursed by Metropolitan for the purchase of the real estate, and various checks were issued in connection with the closing, at least one of which was cashed for real estate commissions.

19. On October 22, 1999, EquiCredit contacted Metropolitan and its associated agency, Capital Title Company where some of the purchase funds were sent, to try to recover their loan funds for the purchase.

20. Metropolitan and Capital Title Co. issued "stop payment" orders on the remaining checks, and Plaintiffs Strohbeck were not paid for the purchase of the real estate.

21. Debtor Zuniga and other individuals acting at her request attempted to convince EquiCredit to complete the financing.

22. After EquiCredit refused, Debtor Zuniga attempted to obtain substitute financing through other lenders without success.

23. Debtor Zuniga was unable to complete the purchase when EquiCredit ordered the escrow agent(s) to recover its loan proceeds and thereby causing nonperformance of the Contract.

24. On January 25, 2000, Debtor Zuniga was discharged in Bankruptcy.

25. On July 21, 2000, Plaintiffs Strohbeck sold their house to another buyer for $108,500.00.

26. Plaintiffs Strohbeck are claiming they have suffered damages in excess of $20,000.00 as a result, made up of carrying expenses, resale expenses, mortgage interest and the difference in the price that they ultimately sold their house. Debtor lacks sufficient knowledge to form an opinion as to the amount of any damages suffered by Plaintiffs and asserts that she is not responsible for any damages.

27. In May 2000, Capital Title Company filed an interpleader action to interplead all funds received by it (the approximately $14,000.00 escrowed purchase money, the $500.00 earnest deposit, and the approximately $103,000.00 loan proceeds) in St. Louis County Circuit Court, being Cause No. 00CC01586 to resolve conflicting claims of EquiCredit, Plaintiffs Strohbeck and Zuniga.

28. The interpleader action has since been removed to this Court and the underlying Chapter 7 Bankruptcy of the Debtor (Case No. 99–51092–293) reopened by the bankruptcy trustee seeking the approximately $14,000.00 in purchase money funds

deposited by the Debtor (Adv. No. 0–4324–293).

29. Plaintiffs have pending claims against Capital Title Company and Equi-Credit Corporation, both of which assert affirmative defenses that Plaintiffs are barred from claims against them because of Debtor's bankruptcy and the resulting discharge.[1]

### Discussion

Debtor Zuniga signed a contract to purchase a house from the Strohbecks. Twelve days later she filed for Chapter 7 bankruptcy relief. Three days after that she attended the closing of her real estate purchase. The closing occurred on schedule. A day after closing, however, Zuniga's mortgage lender declined to fund the purchase and directed the title company to not disburse the funds. Zuniga was unable to obtain alternative financing and the real estate purchase ultimately fell through. The Strohbecks subsequently sold their house to another person. The Strohbecks assert that they incurred damages arising from Zuniga's alleged breach of contract based on her failure to purchase their home.

Zuniga denies that she breached the sales contract. She asserts that even if she was subject to a claim for breach of contract the claim is dischargeable because the contract was entered pre-petition. In the alternative, Zuniga asserts that the sales contract was an executory contract at the time she filed her bankruptcy petition. The right to assume or reject an executory contract belongs to the Chapter 7 trustee. 11 U.S.C. § 365. If the trustee does not assume or reject the contract, it is deemed rejected. 11 U.S.C. § 365(d)(1). Zuniga argues that her trustee did not assume or

reject the contract and, therefore, the contract was deemed to be rejected and any resulting claim is a pre-petition debt.

Debts incurred by a debtor after a bankruptcy petition has been filed are not subject to the order of discharge entered in that case. *In re Newmark*, 177 B.R. 286, 290 (Bankr.E.D.Mo.1995). A debt is incurred when a debtor becomes legally obligated to pay. *In re Wey*, 854 F.2d 196, 200 (7th Cir.1988). A debtor is not legally obligated to pay under a real estate sales contract until the date of closing. *Id.*

The closing of the real estate transaction between Zuniga and the Strohbecks was scheduled for and took place three days after Zuniga filed her bankruptcy petition. Zuniga was not legally obligated to pay the purchase price of the Strohbecks' home until the date of closing. The Strohbecks' claim for breach of contract is based on Zuniga's failure to complete the closing due to a lack of financing. Therefore, the debt arising from Zuniga's alleged breach of contract was incurred post-petition and is not subject to discharge.

Zuniga's executory contract argument is unavailing. In Missouri, upon entering a real estate contract, the buyer holds equitable title to the property. The seller is left with the bare legal title and the right to receive the purchase price. *Hernandez v. Prieto*, 349 Mo. 658, 162 S.W.2d 829 (1942). Given the shifting legal rights between the buyer and seller, courts are split on the issue of whether a real estate contract is an executory contract or an actual transfer of ownership with a lien granted to the seller. The Court was unable to find any controlling authority to resolve this issue. However, based on the facts of

---

1. The parties attached a portion of Debtor's deposition of May 29, 2001, and stipulated that to be what the Debtor's testimony would be at trial. The Court has considered this testimony in making its final determination.

the present adversary proceeding the Court need not make a final determination of this matter. Even assuming for argument that a real estate contract is an executory contract, Zuniga's actions have prevented her from claiming that the contract for the purchase of the Strohbecks' home was rejected.

 If the Chapter 7 trustee fails to assume or reject an executory contract, it is deemed rejected 11 U.S.C. § 365(d)(1). An executory contract is not subject to § 365, however, when the debtor fails to disclose the existence of the contract on her bankruptcy schedules. A trustee cannot be deemed to have rejected a contract of which he was not aware and which was not listed in the debtor's schedules. *Financial Corp. v. McCraw Candies, Inc.,* 347 F.Supp. 445 (N.D.Tex.1972). The parties have stipulated to the fact that Zuniga did not disclose to the trustee the existence of the real estate contract or her equitable interest in the Strohbecks' property at any time during the pendency of her bankruptcy proceeding. Zuniga's trustee, therefore, is not deemed to have rejected the sales contract between Zuniga and the Strohbecks.

A matter of equity is also an issue in the present case. Relief under the bankruptcy laws is intended to give debtors a fresh start by discharging debts which the debtor seeks to avoid. Zuniga did not seek to avoid the sales contract with the Strohbecks. In her deposition she states that she contacted her bankruptcy attorney and filled out her bankruptcy paperwork before she entered the real estate contract. (Zuniga's Dep. at pp. 17–30) She never disclosed the existence of the contract to her bankruptcy attorney or to her Chapter 7 trustee. She did not list the contract or her equitable interest in the property in her schedules. She revealed to her real estate agent and to her loan officer that she was contemplating filing a bankruptcy proceeding but still wanted to purchase a house. (*Id.* at pp. 17–21) Zuniga attempted to close on the house after she filed for bankruptcy. At the closing she executed a document representing that she had never filed for bankruptcy relief. She only walked away from the purchase of the Strohbecks' house after she failed to secure financing. Zuniga's behavior demonstrates that she did not seek to avoid the debt associated with the sales contract but rather made every attempt to incur and assume the debt even after she filed for bankruptcy relief. The Court finds that it would be inequitable to allow Zuniga to be discharged of the alleged debt concerning the very real estate transaction which she purposely failed to disclose in her bankruptcy proceedings.

An Order consistent with this Memorandum Opinion was entered on July 18, 2001.