GERTRUDE CHESNUT ET AL., APPELLANTS, V. MASTER
LABORATORIES, A CORPORATION, ET AL., APPELLEES.
27 N. W. 2d 541

Filed May 16, 1947.    No. 32134.

*Fischer, Fischer & Fischer,* and *Emmet S. Brumbaugh,* for appellants.

*Kennedy, Holland, De Lacy & Svoboda,* and *L. J. Tierney,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

MESSMORE, J.

This is an action to obtain a declaratory judgment setting aside and holding for naught a written lease and option contained therein to purchase certain real estate.

The plaintiffs' petition sets forth facts which will appear later in the opinion in the summary of the relevant and material evidence adduced from the record. Under the facts so alleged, it is the plaintiffs' contention that the executrices of the estate of William Pfeiffer, deceased, exceeded their authority in leasing real estate for a period of time longer than their term of office, and also exceeded their authority in giving an option to purchase such real estate. It is the further contention of the plaintiffs that the voluntary dissolution of the lessee corporation, and the taking over of the business by a partnership under the same firm name and style, effected an assignment of the lease contrary to the terms thereof. The prayer of the petition is to have the court determine the controversy between the parties under the lease and their rights and duties thereunder; that the defendants, John E. Von Dorn and Agnes C. Von Dorn, be declared as tenants from month to month in the premises; also, that the lease and option to purchase contained therein be set aside and held for naught.

The answer of the defendants sets forth that since the dissolution of the corporation the partnership composed of John E. Von Dorn and Agnes C. Von Dorn as legal successors of the Master Laboratories, Incorporated, continued to occupy the premises and carry on the same business the Master Laboratories, Incorporated had

engaged in, and to pay rent as provided in the lease, all with the full knowledge, acquiescence, approval, ratification, and consent of the plaintiffs; further, defendants allege that the lease and option contained therein are in full force and effect. Defendants pray dismissal of the plaintiffs' petition.

The trial court held that the plaintiffs were estopped from denying the validity of the lease; that the trustees of the corporation were entitled to enforce the lease and option to purchase; also that the dissolution of the corporation did not terminate the lease nor work a sale, assignment, underletting, or relinquishment of the lease in violation of the terms thereof. From this judgment the plaintiffs appeal.

For convenience the plaintiffs will hereinafter be referred to as appellants, and the defendants as appellees.

It appears from the record that William Pfeiffer, during his lifetime, was the owner of real property located at 2523 Leavenworth Street, Omaha, Nebraska. He died on or about February 13, 1941, leaving a will dated April 3, 1937. The will was admitted to probate, and Gertrude Chesnut and Louise Koscielski, daughters of William Pfeiffer, deceased, were appointed executrices. Clarence L. Pfeiffer, a son, also nominated in the will as executor, declined to serve. Paragraph 6 of the will gave the residue of the estate in equal shares to Gertrude Chesnut, Louise Koscielski, and Clarence L. Pfeiffer after certain provisions of the will had been complied with.

John E. Von Dorn and Agnes C. Von Dorn were the principal stockholders in the Master Laboratories, Incorporated. There were a few qualifying shares in the names of employees of the corporation. In 1942, the corporation was desirous of changing its location. As a result, John E. Von Dorn contacted D. C. Siampaus, a real estate dealer, who showed him the property of the Pfeiffer estate located at 2523 Leavenworth Street. The building was in a bad state of repair, and to accommodate the business of the corporation would require extensive

improvements. Negotiations followed between Mr. Von Dorn and Mr. Siampaus with reference to the corporation leasing the premises. The corporation was interested in obtaining a long-term lease with an option to buy the premises, because of the amount of improvements that would be required to carry on the business. Different offers were made as to the amount of rent, and Siampaus discussed the matter fully with the executrices of the Pfeiffer estate. It was finally agreed to lease the premises to the corporation for a period of ten years, from May 1, 1942 to April 30, 1952, at a rental of $110 per month with an option to purchase to run for five years from the date of the lease. The amount of the purchase price was fixed at $14,000 cash. Siampaus and the executrices understood that $10 per month of the rent was paid for the option, although the amount of rent and the amount paid for the option were not divided in the lease. The lease contained the following provision in substance: It was agreed that the corporation should, at its own expense, do any necessary remodeling inside the building, the estate to pay for repairs necessary on the building itself, unless such repairs were the result of the negligence of the employees of the corporation.

The corporation went into possession of the building under the lease and made extensive improvements and remodeling of the building which necessitated an expenditure of $13,000. A great many of the improvements made, exclusive of the equipment necessary to carry on the business of the corporation, were of a permanent nature and enhanced the value of the building. The appellants disputed the amount the appellees spent for the improvements, and produced a witness who testified that the total cost of fixing the offices and other improvements would not exceed $3,600.

At the time of the execution of the lease, and approximately a year and a half after the corporation went into possession of the building, Siampaus endeavored to sell the building to the corporation for $12,500. The record

shows that Siampaus was the agent of the executrices, and that they knew all of the details of the lease and option to purchase. The attorney for the executrices was also acquainted with the details of the transaction and drew the lease and option in accordance with the negotiations had respecting it. Siampaus sold other property for the executrices upon which there were options to purchase, and was paid a commission by them on this transaction.

On July 19, 1943, by proper legal notice, the corporation was dissolved. Thereafter a partnership was legally formed consisting of John E. Von Dorn and Agnes C. Von Dorn, his wife, doing business under the firm name and style of the Master Laboratories. The Von Dorns became the trustees of the corporation. As a partnership, the Von Dorns, who were the principal stockholders of the corporation, carried on the same business that the corporation had engaged in, and are the identical parties who constituted the corporation.

Distribution of the assets of the estate was made, and the receipt of Clarence L. Pfeiffer for his distributive share appears in the record, dated April 27, 1945, filed May 16, 1945. Having completed the distribution of the assets of the estate, the executrices were discharged on May 16, 1945. On May 1, 1945, a check in the amount of $110, made payable to the estate for the rent to June 1, 1945, was accepted by the executrices and became part of the assets of the estate. On May 29, 1945, a part of the second story, the roof, and the first floor of the building were destroyed by fire. On June 5, 1945, Gertrude Chesnut, Louise Koscielski, and Clarence L. Pfeiffer brought suit in the district court against the Master Laboratories, Incorporated, for damages in the amount of $8,000 alleged to have been caused by the negligence of an employee of the defendant resulting in fire and damage to the building. The petition recited that the executrices of the William Pfeiffer estate entered into a written lease with the defendant. The lease is attached

to and made a part of the petition, and is the same lease in question in the instant case. After the fire the Master Laboratories continued occupancy of the useable part of the premises and offered to pay a reasonable rent for the same, which was not accepted.

Clarence L. Pfeiffer resided in Michigan and from 1941 to 1944, due to the nature of his work and the time required by it, the estate matters were handled by his sisters, the executrices. It is apparent from the record that he was informed of matters relative to the estate, knew of the lease and the option to purchase, and was not in favor of the option.

The foregoing constitutes a summary of the material and relevant evidence except as the same may hereafter appear in the opinion.

The appellants advance the following legal propositions to support their contention that the court erred in entering judgment for the appellees. We take up these propositions of law in continuity.

The executrices exceeded their authority in leasing the premises for a period of time longer than their term of office. Section 30-406, R. S. 1943, provides in part: "The executor * * * shall have a right to the possession of all the real as well as the personal estate of the deceased, and may receive the rents, issues and profits of the real estate, until the estate shall have been settled, or until delivered over, by order of the county court, to the heirs or devisees, * * * ."

In analyzing this provision of the statute this court, in Muller v. Harms, 117 Neb. 657, 221 N. W. 898, held: "Under the statute granting to an administrator the right to possession of decedent's real property and to the rents thereof 'until the estate shall have been settled,' an administrator's lease for a longer period is not necessarily 'void' as distinguished from 'voidable,' but may be accepted and ratified by mutual consent of the lessee and the heirs and continued in full force after the settle-

ment of the estate and the discharge of the administrator, the heirs subsequently receiving the rent."

It is apparent that section 30-406, R. S. 1943, does not declare that lease agreements made by an executor in excess of the powers granted are void. At most, the statute made the lease voidable upon timely exercise of a right to declare it void. See, also, Globe & Rutgers Fire Ins. Co. v. Rose, 91 Fed. 2d 635.

It is apparent that the executrices in the instant case may lease the land of the deceased person at any time until the debts against the estate have been paid and the estate is settled. If such a lease be entered into by the executrices for a longer period of time, the lease is not void, but is voidable by the heirs, and can also be ratified by them. We are to determine whether or not, under the evidence, the lease in question was acquiesced in and ratified by the residuary devisees; and whether or not they are estopped from denying the validity of the lease.

The appellants rely on a part of 33 C. J. S., Executors and Administrators, § 150, p. 1111, as follows: "A representative of a decedent's estate in his official capacity is bound by the laws of estoppel, although his official acts ordinarily will not estop him as an individual and his individual acts usually do not estop him in his official capacity. * * * acts of an executor * * * will not bind or estop him in his individual capacity, * * * ." The part of the text not quoted is also of importance in determining the question presented. It is as follows: "However, unauthorized acts of the representative cannot bind the estate or give rise to an estoppel against it; and except where his acts as a representative and as an individual are so closely connected and associated that it is impossible to distinguish his actions in one capacity from the other, or where his acts as a representative have resulted or will result in his individual profit, acts of an executor * * * in his representative capacity will not bind or estop him in his individual capacity, and conversely, except where the estoppel is based on, and can be supported by,

equities against the estate, his acts as an individual cannot operate as an estoppel against him in his representative capacity."

The following authorities are likewise pertinent to a determination of this assignment of error.

In Wells v. Steckelberg, 52 Neb. 597, 72 N. W. 865, this court held: "One who in a representative capacity assumes to sell and convey to another the entire estate in land, is estopped as against the purchaser from asserting an estate in his own right in the same land, * * *." In the body of the opinion the court said: "That an estoppel arises against the assertion of a right in oneself by reason of a conveyance made in a representative capacity, see Poor v. Robinson, 10 Mass., 131." In that case a release was made by executors purporting to act under a power in the will. The power did not in fact extend to the estate in question, and the court held that the release was void. However, the executors were also heirs, and the court further held that as such they were estopped from setting up title as against the release they had made as executors. See, also, Little v. Giles, 25 Neb. 313, 41 N. W. 186.

In the case of Black v. Beagle, 59 Wyo. 268, 139 P. 2d 439, the court said: "The fact that the appellant conveyed the premises in his capacity as administrator of the estate of Zettie Beagle would make no difference. He is estopped in his personal capacity as to what is done in his representative capacity." The court in its opinion cites Wells v. Steckelberg, *supra,* and Poor v. Robinson, *supra.*

The reason for the rule is set out in Bliss v. Tidrick, 25 S. D. 533, 127 N. W. 852, where the court said: "And it certainly conforms to common sense and justice that where a person, the heir to an estate and also the representative of such estate, intending to convey the interest to such lands owned by the estate for the benefit of the estate and through it for the benefit of the

heirs, including such representative, enters into an instrument of conveyance with a purchaser in good faith and for value purporting to carry out the intention of such parties that the title to the property shall be conveyed, such person should be forever estopped, regardless of any covenants or warranties, from being heard to say that the instrument executed was void and of no effect."

In the instant case two representatives of the estate gave a ten-year lease in their representative capacity. They were residuary devisees, and as owners of the property claim that the lease is not valid against them. We have heretofore set forth the facts which disclose a ratification and acquiescence in the lease by them. Clarence L. Pfeiffer, a residuary devisee and also an owner of the property, likewise acquiesced in and ratified the lease. Furthermore, the residuary devisees, as individuals and owners of the property, filed an action in the district court for damages against the corporation charging that one of its employees by negligence caused the building to set on fire. The lease here in question is made a part of the petition, and certain clauses therein are quoted and relied on.

"One who brings suit upon a contract necessarily asserts that it is valid and enforceable, else he could not derive a cause of action from it. Hence if one is aware of facts which would justify him in rescinding a contract or other transaction into which he has entered, but nevertheless institutes an action upon it, this is an election to affirm it and a waiver of any right of rescission, and the election so made is final." Black on Rescission and Cancellation, (2d ed.) Vol. 3, § 612, p. 1476. See, also, 17 C. J. S., Contracts, § 443, p. 926; Darnell v. Waldrop, (Tex.) 57 S. W. 2d 392.

"Where a party to a contract elects to sue upon it for damages resulting from an alleged breach of its terms by the defendant, he thereby ratifies it as a valid contract, binding alike upon himself and the defendant."

Stramel v. Hawes, 97 Kan. 120, 154 P. 232. See, also, Darnell v. Waldrop, *supra.*

The appellants next contend the executrices exceeded their authority in giving an option to purchase when the will provided they were restricted to sell the real estate for cash only. The appellants cite and rely on the following text statements to sustain their position on this assignment of error: "An executor acting under a will in making a sale of the property of the testator is generally held to a strict execution of the powers conferred. To effect a valid sale all the directions of the power must be complied with. So a power to sell does not necessarily include a power to give an option, * * * ." 11 R. C. L., Executors and Administrators, § 483, p. 400.

"A power given to an executor to sell the testator's property does not necessarily include a power to give an option to purchase such property, * * * ." 21 Am. Jur., Executors and Administrators, § 696, p. 772. See, also, 33 C. J. S., Executors and Administrators, § 285, p. 1309, and § 274, p. 1293. The appellants also rely on the following authorities: Moffit v. Fitzer, (Iowa) 141 N. W. 935; Hickok v. Still, 168 Pa. 155, 31 A. 1100; Moore v. Trainer, 252 Pa. 367, 97 A. 462; Trogden v. Williams, 144 N. C. 192, 56 S. E. 865.

We have examined the foregoing cases and find that they are not applicable to the case at bar. In the case of Moffit v. Fitzer, *supra,* the question at issue was the assessability of the property in the hands of the executors, the executors having sold the property under contract. There was no option agreement involved in the contract.

In Hickok v. Still, *supra,* there were no heirs or devisees involved, and no question was presented whether or not an heir would be bound by an option contract made by him as an executor.

In Moore v. Trainer, *supra,* there was no question involved as to the right of an heir to repudiate an option made by him as an executor.

In Trogden v. Williams, *supra,* the heirs and devisees, as in the instant case, did not execute the option agreement. They were not the plaintiffs as here, in an action to repudiate individually something they had done in a representative capacity.

We deem the following authorities applicable to this assignment of error:

"An unauthorized contract of sale entered into by the representative is not binding on, and cannot be enforced against, the estate, although the heirs are named in the contract, but it is not signed by them. This rule applies to an option to purchase given by the representative, to a contract to sell and give a conveyance on obtaining permission of the court, or to a contract to obtain a conveyance, under an agreement to sell made by decedent, where the contract was not made on behalf, or with knowledge, of the heirs. However, such a contract of sale is not necessarily void, as it may bind the representative individually." 33 C. J. S., Executors and Administrators, § 270, p. 1287.

"An unauthorized sale of real estate by the executor or administrator is binding on the heirs or devisees if it is ratified by them, or by their ancestor, as where without fraud or mistake they receive the proceeds from such sale; * * *." 33 C. J. S., Executors and Administrators, § 273, p. 1289.

Whether or not there is ratification, acquiescence, and estoppel depends upon the facts in each individual case. We repeat the following facts which disclose acquiescence and ratification of the option in the instant case. It was known to the executrices and to Clarence L. Pfeiffer, through their agent and their attorney, that Mr. Von Dorn wanted a long-term lease with an option to purchase. The agent obtained authority to propose a lease for ten years with an option to purchase for $14,000 cash on or before five years from the date of the lease. This was agreeable to all parties concerned, and the attorney representing the executrices drew the

option and lease. They also received a separate consideration each month for the option, as heretofore explained. Mr. Von Dorn told the agent of the executrices that he expected to buy the premises; he wanted to use the money that he had available at the time to fix the building up; and the deal would have to be arranged so that he could buy it later. We are convinced that under the circumstances of this case the residuary devisees as owners of the real estate acquiesced in and ratified the option to purchase as contained in the lease, and are estopped to deny its validity.

The appellants contend the voluntary dissolution of the corporation and the taking over of the business by a partnership under the same firm name and style effected an assignment of the lease contrary to the terms thereof. It is agreed between the parties that generally a dissolution of a corporation does not invalidate its lease, but the trustees or successors succeed to the rights of the corporation under the lease. The appellants contend, however, that in this case there is a different situation because the lease contains the following clause: " * * * that it (the Master Laboratories, a corporation) will not sell, assign, underlet or relinquish said premises without the written consent of the lessor, under penalty of forfeiture of all its rights under this lease, at the election of the party of the first part * * *." Therefore, when the corporation was dissolved the trustees were vested with the benefits under the lease and by them the lease was, in effect, assigned to a partnership which was contrary to the quoted clause in the lease and gave the appellants the right to elect to forfeit the lease, which they have done and seek to do in this action.

In considering this assignment of error, the contention is that the dissolution of the corporation worked an assignment of the lease by operation of law. The covenant against assignment in the instant lease did not provide for forfeiture if the term should be assigned by operation of law. "A covenant not to assign or sublet is to be

construed strictly against the lessor in the absence of a statute to the contrary. Such covenants are not favored, and will not be extended by implication. * * * While a covenant against an assignment of a lease can be so drawn as to provide for forfeiture by an assignment by operation of law, such a covenant will not be inferred." 35 C. J., Landlord and Tenant, § 61, p. 978.

Since the lease under consideration made no provision with reference to an assignment by operation of law, nothing can be read into it to the effect that it would be terminated by dissolution of the corporation. Construing the lease as required by law, it is apparent that there was no intention on the part of the lessors to provide a forfeiture of the lease by operation of law.

Forfeitures of estate under leases are not favored in law and the right to forfeit must be clearly stipulated. If a forfeiture has not been stipulated for, a covenant or condition which is merely implied, or an express one not clearly within the forfeiture clause, will not sustain a claim of forfeiture for breach. See Easley Coal Co. v. Brush Creek Coal Co., 91 W. Va. 291, 112 S. E. 512.

Covenants against assignment or underletting are not favorably regarded by the courts and are liberally construed in favor of the lessee, but this means only that the scope of an assignment in a lease will not be enlarged by the courts, and that the covenant will not be considered as violated by any technical transfer that is not fairly and substantially an assignment. See White v. Huber Drug Co., 190 Mich. 212, 157 N. W. 60.

The cases of H. P. Hood & Sons v. Perry, 248 Mass. 350, 142 N. E. 794, and White v. Huber Drug Co., *supra*, cited by the appellants in support of this assignment of error are not applicable. The two cases do not involve circumstances where there had been a dissolution of a corporation and a continuation of the same business and parties by a partnership.

The corporation did not cease to exist upon the filing of the notice of dissolution, nor did the corporate lease

cease to exist. Section 21-186, R. S. 1943, provides: "All corporations operating or organized under this act, whether they expire by the limitation in their articles of incorporation, or are otherwise dissolved, shall nevertheless be continued for the term of five years from such expiration or dissolution as bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their properties, and to divide their capital stock but not for the purpose of continuing the business for which said corporation shall have been established; * * * ."

Five years have not elapsed since the dissolution of the corporation. The appellants give recognition to the continuation of the corporation for the purposes indicated in the statute. They instituted the instant suit against the Master Laboratories, Incorporated, a corporation, John E. Von Dorn and Agnes C. Von Dorn, trustees of the corporation, and against the Von Dorns individually, and as partners. So, the Von Dorns are present in this case in their corporate, partnership, and individual capacities, and the court is requested to determine the rights of the parties under the lease.

Generally, a lease to a corporation is not terminated by the corporation's dissolution unless the lease so provides, especially in view of the statute directing that corporation's officers act as trustees after forfeiture of its charter. See Perry v. Shaw, 152 Fla. 765, 13 So. 2d 811.

Appellants assert the executrices were lulled into believing that the corporation still continued to exist, for the reason that as late as May 1, 1945, the rent check received by them was on a Master Laboratories, Incorporated, form. They claim they knew nothing about the dissolution of the corporation, and the acceptance of rent from the date of the dissolution of the corporation, July 19, 1943, to May 16, 1945, cannot work an estoppel against the appellants for the reason that they were not

in full possession of the facts, citing 31 C. J. S., Estoppel, § 70, p. 264. "It is generally indispensable to the application of the doctrine of equitable estoppel that the person claimed to be estopped shall have had full knowledge of the real facts at the time of his representation, concealment, or other conduct relating thereto and alleged to constitute the basis of the estoppel."

We are of the opinion the executrices were vested with all of the facts with reference to the dissolution of the corporation and the formation of the partnership. The notice of dissolution of the corporation was given as required by law. This notice advised the world that the corporation had been dissolved; and that all its assets upon dissolution were placed in charge of the trustees who assumed the obligation to pay and discharge any and all existing obligations against the corporation. On September 14, 1943, the Von Dorns filed with the county clerk their certificate of partnership, stating that they were about to engage in business under the firm name of Master Laboratories. The rent, as provided for in the lease, was paid, and the executrices accepted it during this period of time. If the publication of a notice properly made of dissolution of a corporation, and the filing of the proper articles of partnership means anything, then surely these appellants had notice.

"The restriction against assignment or subletting may be waived by the act, acts, or conduct of the lessor in recognition of the validity of an assignment or subletting, and with knowledge thereof, as where, with knowledge of the facts, he permits an assignee or subtenant to remain in possession, and accepts subsequently accruing rents from him, but the acceptance of rent must be with knowledge of the breach." 35 C. J., Landlord and Tenant, § 71, p. 983. See, also, 32 Am. Jur., Landlord and Tenant, § 341, p. 303. Even in the event there had been a breach of the lease as contended by the appellants, we are convinced they waived it, for the reason that they had full knowledge of the facts with reference to the dissolution

of the corporation and the forming of the partnership.

From an independent investigation of the record, we conclude the trial court was not in error in entering judgment for the appellees, and the judgment should be, and is, affirmed.

AFFIRMED.