PLOTKIN and wife, Appellants, vs. MILWAUKEE METAL WORKING COMPANY and others, Respondents.*

*September 15—October 11, 1949.*

---

* Motion for rehearing denied, without costs, on November 29, 1949.

For the appellants there was a brief by *Joseph M. Picker* and *William B. Rubin,* both of Milwaukee, and oral argument by *Mr. Rubin.*

For the respondents there was a brief by *Shea & Hoyt,* attorneys, and *Ralph M. Hoyt* and *S. R. Stroud* of counsel, all of Milwaukee, and oral argument by *Mr. Stroud.*

FAIRCHILD, J.   The questions to be resolved relate to the existence or nonexistence of a right in the respondents, Coulson, Kranick, and Wilson, as purchasers of the assets and stock of the Milwaukee Metal Working Company, to exercise control over the premises in order to permit them to grant leave to a licensee, so-called, to remain in possession of the leased premises, when the lease was not assignable or subject to subletting.   The respondents seek to uphold a judgment in their favor based on the claim that there has been no assignment of the lease; that the renewal of the lease for another three-year term was for the purpose of conserving an asset of the dissolved corporation; and that the permission to Wis-

consin Metal, operating under the name of Milwaukee Metal Working Company, "merely amounts to a license to use the property" and does not constitute a violation of the covenants in the lease against assigning or subletting. To avoid confusion we will refer to the new corporation as the Wisconsin Metal.

Respondents advance as authority for the decision made at the circuit the cases of *Kay Furniture Co. v. Rovin,* 312 Mich. 290, 20 N. W. (2d) 194, and *Chestnut v. Master Laboratories,* 148 Neb. 378, 27 N. W. (2d) 541. We are convinced that the doctrine of those cases does not apply here. As will be pointed out, the facts are not similar enough, in fact they are too readily distinguishable, to be regarded as identical or analogous. In the *Chestnut Case* the long dealing between the lessors and the successors to the dissolved corporation, both before and after the dissolution, brought about a relationship between them that cannot be found in the facts of the case at bar. All this appears from a statement in the opinion where Mr. Justice MESSMORE says in response to an argument of the lessors that they were lulled into believing that the corporation still continued to exist (p. 392) : "We are of the opinion the executrices were vested with all of the facts with reference to the dissolution of the corporation and the formation of the partnership." On that state of facts and the showing that they had accepted rent for almost two years after the date of dissolution the court said (p. 392) : " 'The restriction against assignment or subletting may be waived by the act, acts, or conduct of the lessor in recognition of the validity of an assignment or subletting, and with knowledge thereof, as where, with knowledge of the facts, he permits an assignee or subtenant to remain in possession, and accepts subsequently accruing rents from him, but the acceptance of rent must be with knowledge of the breach.' 35 C. J., Landlord and Tenant, sec. 71, p. 983. See also 32 Am. Jur., Landlord and Tenant, sec. 341, p. 303. Even in the event there had been

a breach of the lease as contended by the appellants, we are convinced they waived it, for the reason that they had full knowledge of the facts with reference to the dissolution of the corporation. . . ." There is no claim of waiver presented by the record now before us.

While covenants against assignments or subletting are not favorably regarded by the courts and are liberally construed in favor of a lessee "this means only that the scope of an assignment in a lease will not be enlarged by the courts, and that the covenant will not be considered as violated by any technical transfer that is not fairly and substantially an assignment." *Chestnut v. Master Laboratories, supra,* p. 390. That opinion also calls attention to the case of *White v. Huber Drug Co.* 190 Mich. 212, 220, 157 N. W. 60. In that case it was held that: "The fact that one company purchases the assets and assumes the liability of another company does not make the two companies identical."

The facts in the *White Case* are like those with which we are now confronted. The headnote summarizes them and the ruling as follows (157 N. W. 60) :

"Under a lease to a corporation for a term containing a covenant not to assign, transfer, or sublet without the lessor's written assent upon default in which the lessor might repossess himself of the premises, a bill of sale of all the insolvent corporations' property and assets to a new corporation organized by its president who had been its largest stockholder, . . . and who was the holder of 47 of the 50 shares of the new corporation, one share of which was issued to each of three others, including the officers of the old corporation, in consideration of which the new corporation, whose purposes of incorporation were the same as those of the old corporation, assumed all the old corporation's debts and liabilities, and, as provided in the bill of sale, assumed to use the name of the old corporation and took possession and paid rent by check signed in its name, showed a want of identity between the old corporation and the new corporation, and an 'assignment' in breach of the covenant.

"A covenant not to assign or underlet leased premises without the assent of the lessors was not waived by a lessor's signature to a writing whereby the lessee company, its successors and assigns, might renew the lease at their option, since the terms of the writing were not inconsistent with the covenant."

The other case, *Kay Furniture Co. v. Rovin, supra,* relied on by the trial court was one where the lessee had the right to sell and assign its leasehold interest and also the right to sublet. That case clearly is not in point. The transaction there involved thus occurred as a part of the dissolution of the corporation and with a lease which could be treated as an asset at the time. The doctrine of that case is only to the effect that: "Where [a] dissolved corporation could lawfully renew underlying lease of premises on which it had conducted its business, it could enter into a valid sublease, notwithstanding that as incident thereto corporation, then in process of liquidation, would assume some contingent liabilities." [Headnote, 20 N. W. (2d) 194.]

Although the dissolved corporation, Milwaukee Metal, might have been able to hold the lease for the three-year period allowed by statute to conserve its assets had it continued to act under the statute, it becomes clear that the lease did not continue as an asset. It has no sale value because it cannot be transferred; it is of no value in the hands of the partnership or the Wisconsin Metal because the property cannot be sublet. And the Milwaukee Metal Working Company is out of business. There is in fact and law no remaining asset to be conserved.

The evidence given by Mr. Coulson shows that a plan for complete liquidation of the lessee was agreed upon by respondents. It was planned that on September 2, 1947, the lessee "shall transfer all of its property and assets of every kind, subject to such of its liabilities as shall not have been paid on or before that date, in complete liquidation of Milwaukee Metal Working Company, to its sole stockholder, the Coulson

Company, in complete cancellation of all of the outstanding stock of the Milwaukee Metal Working Company."

The lessee is a dissolved corporation. The other respondents have acted under and are claiming rights which do not belong to them. There is no occasion for the further exercise by anyone of efforts to conserve the lessee's assets. It has no debts. Its obligations have been taken over by Coulson, Kranick, and Wilson, who are the real actors in the matter. It has no business to carry on. The premises have been abandoned and are now unlawfully occupied.

By reason of all that has taken place, the lease once held is so completely without value that it is not entitled to the consideration of an asset. No means available to the respondents or either of them now exists by which elements of worth or any right can be brought into it. This is not an instance of transfer by operation of law; and no equities exist requiring the protection of the occupancy now claimed. The new corporation is a stranger to the original relation of landlord and tenant.

Therefore, respondents have no right to withstand the demand of the landlords that the property be vacated and returned to them.

*By the Court.*—Judgment reversed. Cause remanded with directions to enter judgment in favor of the plaintiffs and for further proceedings in accordance with this opinion.