**AMERICAN DAIRY QUEEN CORPORA-TION, Plaintiff-Appellee,**

v.

**BROWN–PORT COMPANY, a Wisconsin limited partnership, Defendant-Appellant.**

**No. 79–2168.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1980.

Decided March 25, 1980.

Alan Marcuvitz, Milwaukee, Wis., for defendant-appellant.

Wayne E. Babler, Jr., Quarles & Brady, Milwaukee, Wis., for plaintiff-appellee.

Before BAUER, WOOD, and CUDAHY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Brown-Port Company (Brown-Port) appeals the entry by the district court of a preliminary injunction enjoining Brown-Port from breaching an exclusive use clause contained in a shopping center lease that it executed in favor of its lessee, American Dairy Queen Corporation (DQ). Our review is narrowly limited to the question whether issuance of the preliminary injunction was an abuse of discretion. *Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1022 (7th Cir. 1979). Finding that it was, we reverse and remand for further proceedings consistent with this opinion.

Brown-Port, owner and operator of the Brown-Port Shopping Center in suburban Milwaukee, leased commercial premises therein to DQ under a lease, which commenced in 1969 and, assuming exercise by DQ of its two five-year options, extends through 1994. Although the lease is quite detailed, the only provision relevant to the dispositive issue is paragraph 29(b), which grants DQ the exclusive right to conduct a "retail store for the sale of ice cream and dessert products, sandwiches and other foods customarily sold in the normal fast food service business." That paragraph also contains Brown-Port's covenant that it will not lease or permit the use of any of its property within three miles of the premises for any such purpose or use. Shortly after securing the lease, DQ executed a sublease, which incorporates by reference the terms and conditions of the lease, to G.N.R., Inc. (GNR), a DQ franchisee.[1] GNR then oper-

---

1. Paragraph 29(b) contains a proviso that rights granted thereunder are contingent upon DQ's conformity with all terms of the lease. Paragraph 22 forbids DQ from subletting the premises without Brown-Port's prior written consent.

Brown-Port contends that execution of the sublease was in breach of paragraph 22 and

ated a Dairy Queen retail store on the leased premises until 1975 when, by mutual agreement, DQ and GNR terminated their franchise agreement. GNR, however, continued occupancy of the premises under the sublease but changed the name of its store to the "Fudge-Pump." The Fudge-Pump, like its predecessor, is a fast-food retail store within the meaning of paragraph 29(b).

In early 1979 Brown-Port leased to the McDonald's Corporation (McDonald's) premises within the Brown-Port Shopping Center for use as a McDonald's restaurant. DQ promptly filed this diversity suit in the district court, seeking enforcement of paragraph 29(b), and moved for a preliminary injunction, Fed.R.Civ.P. 65, to enjoin Brown-Port from allowing occupancy in the shopping center by any prospective tenant whose occupancy would violate that paragraph. GNR, however, did not join in the suit, presumably because it was not a party to the main lease. Following an evidentiary hearing, Judge Warren entered a Memorandum and Order enjoining Brown-Port "from leasing to McDonald's Corporation or permitting McDonald's Corporation to occupy a space in the Brown-Port Shopping Center. . . ."

■ The law in this circuit is clear:
The universally accepted standard for the appellate test of a preliminary injunction is whether there was an abuse of discretion in granting or denying it. The dis-

cretion exercised by the district court is measured against several prerequisites: (1) the plaintiffs have no adequate remedy at law and will be irreparably harmed if the injunction does not issue; (2) the threatened injury to the plaintiffs outweighs the threatened harm the injunction may inflict on the defendant; (3) the plaintiffs have at least a reasonable likelihood of success on the merits; and (4) the granting of a preliminary injunction will not disserve the public interest. A preliminary injunction is an extraordinary remedy which is not available unless the plaintiffs carry their burden of persuasion as to all of the prerequisites.

*Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.*, 545 F.2d 1096, 1097 (7th Cir. 1976) (footnote and citations omitted). Our review focuses on the question whether the district court abused its discretion by issuing the preliminary injunction despite its finding that DQ had available an adequate remedy at law.[2]

■ The district court reasoned that because of the sublessor-sublessee relationship between DQ and GNR, DQ could assert and rely upon GNR's likely destruction absent the preliminary injunction to satisfy the first prong of the *Fox Valley* prerequisites. Finding no case authority for the notion that a plaintiff can secure injunctive relief solely to prevent irreparable harm to a nonparty, the court analogized to cases that have recognized the right of the lessee/sublessor to enforce the covenant of

---

that consequently it is free of the burdens of paragraph 29(b). The district court agreed that execution of the sublease was in breach of paragraph 22 but disagreed with Brown-Port's characterization of the consequences. Brown-Port was aware of the sublease yet collected rent under the lease for nearly eight years without objection. As we said recently, "waiver occurs when an obligor manifests an intent not to require an obligee to strictly comply with a contractual duty." *Saverslak v. Davis-Cleaver Produce Co.*, 606 F.2d 208, 213 (7th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 1029, 62 L.Ed.2d 762 (1980). Under the circumstances, Brown-Port cannot rely upon a stale breach of paragraph 22 to avoid its obligations under paragraph 29(b).

2. The district court found that DQ's potential injury from Brown-Port's breach of paragraph

29(b) is the loss of rent payments. Monthly rent under the sublease is $825 or 7% of GNR's gross sales, whichever is greater. Since monthly rent under the main lease is $825, DQ will incur losses only when and to the extent that 7% of GNR's monthly gross sales exceed $825. Since the Fudge-Pump is a well-established business, its future profits are amenable to reasonably accurate calculation. *See* D. Dobbs, Remedies § 3.3 at 154 (1973). There being an adequate remedy at law, the district court found that DQ would not suffer irreparable harm if the preliminary injunction did not issue. In light of the facts of this case and the limited grounds upon which DQ argued this point, *see* p. 259 *infra*, this finding was within the district court's discretion.

quiet enjoyment, granted under the main lease, when the lessor interferes with the sublessee. *See Sherwood Medical Industries, Inc. v. Building Leasing Corp.*, 527 S.W.2d 407 (Mo.App.1975); *Tennes v. American Building Co.*, 72 Wash. 644, 131 P. 201 (1913). A breach personal to the lessee/sublessor occurs under these circumstances because the right of quiet enjoyment includes, absent a lease clause to the contrary, the right to be free of the lessor's intentional interference with full enjoyment and use of the leased premises, *see* Tiffany, Real Property § 1012 (3d ed. 1975), and full enjoyment includes the right to freely sublet. *See American Book Co. v. Yeshiva University Development Foundation, Inc.*, 59 Misc.2d 31, 297 N.Y.S.2d 156 (Sup.Ct.1969); *Carson v. Imperial "400" National, Inc.*, 267 N.C. 229, 147 S.E.2d 898 (1966). A lessor who interferes with a sublessee's quiet enjoyment is therefore interfering not with the sublessee's right, for that is extended to it only by the lessee/sublessor, but with the right of the lessee/sublessor, who in the exercise of that right has authorized another by sublease to be in possession.

▇▇▇ The covenant of quiet enjoyment, though much broader in scope, is strikingly similar to the exclusivity clause here at issue. In a commercial lease, the covenant protects the lessee or sublessee, respectively, from actions of the lessor or sublessor that interfere unreasonably with the lessee's or sublessee's ability to conduct business. *See Pollock v. Morelli*, 245 Pa.Super. 388, 369 A.2d 458 (1976). An exclusivity clause, on the other hand, protects its beneficiary from a specific kind of business interference. Such clauses are commonly inserted in commercial leases when the lessee anticipates that the presence of a similar business on nearby premises owned by the lessor will interfere with the lessee's ability to conduct business. A lessee under a lease containing an exclusivity clause expects that the use to which it puts the premises will be exclusive within the reasonable limits of the clause. The violation of that expectancy constitutes the breach.

▇▇▇ Where a sublease clouds the picture, a breach of either a covenant of quiet enjoyment or an exclusivity clause injures the sublessee, as the party in possession, most directly. However, in either case, the lessee/sublessor, as the party in privity with the lessor, remains the holder of the underlying right.[3] Since the lessor's interference constitutes the breach, a suit by the lessee/sublessor against the lessor is consistent with the well-established rule of standing that only the holder of a right may sue for its infringement. *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *Tileston v. Ullman*, 318 U.S. 44, 46, 63 S.Ct. 493, 494, 87 L.Ed. 603 (1943). The assumptions implicit in the district court's decision, however, are inconsistent with that rule. Merely because the lessee/sublessor has standing to sue does not mean that recovery or injunctive relief can be based on actual or potential injury to the sublessee, a nonparty to the suit. In none of the cited cases, *see* pp. 257–258 *supra*, was the lessee/sublessor allowed to recover damages for other than losses that it incurred nor to secure injunctive relief to prevent other than irreparable harm to itself.

▇▇▇ DQ, as the holder of the exclusivity right, is free to sue Brown-Port for damages, which, if appropriate, shall be measured solely by DQ's injury, not GNR's injury. DQ is free also to proceed with its suit seeking permanent injunctive relief similar in scope to the preliminary injunction. But the district court's discretion is limited; an injunction—whether preliminary or permanent—may issue only if DQ persuades the court that DQ will suffer substantial injury not remediable at law if the injunction is denied. Since DQ did not meet that burden in the proceeding below—a finding we accept as not clearly erroneous—issuance of the preliminary injunction was an abuse of

---

3. Assuming, of course, that the lease, as here, does not provide that its provisions shall inure to the benefit of the sublessee.

discretion. Accordingly, the district court is directed forthwith to dissolve the preliminary injunction.

DQ raised for the first time on appeal the argument that its exclusive right under the lease to conduct a fast-foods retail store is a valuable right incapable of reasonably certain calculation and therefore not remediable at law. We are not in a position to pass on the merits of this contention, nor assuming its sufficiency, on the question whether an injunction—preliminary or permanent—should issue. When the district court hears this case on the merits, or beforehand if a preliminary injunction is sought on this basis, the court may consider the question whether DQ likely will suffer substantial irreparable injury to its leasehold interest in exclusivity. Upon that finding or another finding of irreparable injury consistent with this opinion, the district court, provided the other injunctive prerequisites are satisfied, has discretion to issue another preliminary injunction, or upon a hearing on the merits, a permanent injunction similar in scope to the original preliminary injunction.[4] We recognize that if DQ's argument is meritorious, its leasehold interest may be irreparably harmed before further proceedings are undertaken. Accordingly, the district court upon dissolution of the preliminary injunction may desire to hear and decide this case expeditiously. Circuit Rule 18 shall not apply.

REVERSED AND REMANDED WITH DIRECTIONS.

---

4. Our holding today is a limited one: the "no adequate remedy at law/irreparable injury" prerequisite is not satisfied by the harm that may befall a nonparty. We do not suggest that consideration of the effects upon nonparties of the grant or denial of injunctive relief is inappropriate. A district court sitting in the role traditionally occupied by a court of equity retains discretion to consider, as appropriate, all factors bearing on the public interest or on nonparties. *See Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir. 1975); *Middletown Mfg. Co. v. Super Sagless Corp.*, 382 F.Supp. 979 (N.D. Miss.1974), *aff'd*, 515 F.2d 509 (5th Cir. 1975). Nothing in this opinion shall preclude the district court on remand from considering the fate of GNR.