**AMERICAN DAIRY QUEEN CORP., Plaintiff,**

v.

**BROWN–PORT COMPANY, a Wisconsin limited partnership, Defendant.**

No. 79–C–446.

United States District Court, E. D. Wisconsin.

April 22, 1980.

Wayne E. Babler, Jr., Quarles & Brady, Milwaukee, Wis., for plaintiff.

Alan Marcuvitz, Peregrine, Marcuvitz, Cameron & Peltin, Milwaukee, Wis., for defendant.

## MEMORANDUM AND ORDER

WARREN, District Judge.

On September 14, 1979 this Court entered an order preliminarily enjoining defendant Brown-Port from permitting McDonald's Corporation to occupy a space in the defendant's shopping center in Fox Point, Wisconsin. On March 25, 1980, the Seventh Circuit Court of Appeals reversed and remanded this case for further proceedings. As a result of this Court must dissolve the injunction. This, however, will not affect the status quo since defendant has stipulated to maintain it.

In the September 14, 1979 order this Court found that plaintiff had an adequate remedy at law. The preliminary injunction was based instead upon the injury to plaintiff's sublessee, G.N.R., Inc. Irreparable harm is, of course, an essential element of injunctive relief. *American Dairy Queen Corp. v. Brown-Port Co.*, 621 F.2d 255 at 258, 259 (7th Cir. 1980).

Reviewing the facts, plaintiff Dairy Queen (DQ) entered into a lease with de-

fendant Brown-Port (BP) in 1969 which by its terms extends to 1994 if DQ exercises two five-year options. The lease contains an exclusivity clause which prevents BP from leasing its property to any other fast food restaurant selling "ice cream and dessert products, sandwiches and other foods customarily sold in the normal fast service business . . ." within three miles of the demised premises. (¶ 29(b) of the lease). Defendant BP has entered into a lease with McDonald's Corporation which permits the latter entity to operate a McDonald's restaurant. Although it has subleased the premises to a former franchisee, plaintiff DQ seeks to enforce paragraph 29(b) of the lease.

On November 25, 1969, plaintiff DQ subleased the premises to its franchisee, GNR, under the same terms and conditions as the principal lease. In June of 1975 the franchise was terminated but GNR remained in the premises as sublessee. GNR operates a fast food restaurant as described in paragraph 29(b) of the lease. In so subleasing the premises, DQ violated paragraph 22 of the lease because it did not obtain BP's written permission.

Having the benefits of an evidentiary hearing, the appellate court's opinion, and the other records contained in the file, the Court is in a position to partially resolve this matter on summary judgment. There are two threshold issues which control this litigation. First, whether the sublease to GNR deprives DQ of the right to seek enforcement of paragraph 29(b) of the lease and, secondly, if so, whether the lease to McDonald's violates paragraph 29(b).

Paragraph 29(b) provides that the rights granted thereunder are contingent upon DQ's conformity with all other terms of the lease. BP argues that DQ's breach of paragraph 22 of the lease by the sublease to GNR without written permission consequently deprives plaintiff DQ of the right to the protections of paragraph 29(b) of the lease.

■ Several factors conclusively indicate that BP cannot rely upon paragraph 22. The uncontroverted evidence produced at the hearing established that BP accepted maintenance fee payments from GNR for over eight years without objecting. Furthermore, the evidence clearly established the long duration of the sublease. Finally, the owner of GNR, Mr. George Gordon, had regular contacts with Mr. Luber, an owner of defendant BP. These facts clearly and conclusively show BP's awareness and acquiescence in the sublease. In considering this point, the Seventh Circuit Court of Appeals quoted from its opinion in *Saverslak v. Davis-Cleaver Produce Co.*, 606 F.2d 208, 213 (7th Cir. 1979), *cert. denied* —— U.S. ——, 100 S.Ct. 1029, 62 L.Ed.2d 762 (1980), "waiver occurs when an obligor manifests an intent not to require an obligee to strictly comply with a contractual duty." At 256 n. 1. Relying upon this language the court in considering the present case held "Brown-Port cannot rely upon a stale breach of paragraph 22 to avoid its obligations under paragraph 29(b)." *Id.*

While the court of appeals was merely considering the waiver issue for purposes of a preliminary injunction, the facts on the point are so well established as to support summary judgment on the issue of defendant's waiver of rights under paragraph 22. Consequently, plaintiff DQ does not lose the rights provided under paragraph 29(b) of the lease because of the sublease.

■ Defendant BP contends further, however, that plaintiff DQ has not contested defendant BP's leasing of space to certain businesses falling within the ambit of paragraph 29(b). BP has supplied the affidavit of one Herbert Bilsky who attests that two restaurant's, Mike's deli and Kentucky Fried Chicken, conduct operations which are of the type described in paragraph 29(b). Since plaintiff DQ has not attempted to enforce its rights under paragraph 29(b) as to these entities, defendant BP argues that DQ has waived the provision's protections. Under the authority of *Saverslak v. Davis-Cleaver Produce Co., supra*, such acquiescence would constitute a waiver of the protection of paragraph 29(b). There is a genuine factual dispute over the

issue of whether Mike's Deli or Kentucky Fried Chicken are businesses described in paragraph 29(b). As a result, summary judgment cannot be granted on the question of plaintiff's waiver of its exclusivity rights under the lease.

◼ Defendant further urges that plaintiff DQ is not entitled to rely upon 29(b) because the current use of the demised premises violates paragraph 10 of the lease. As indicated earlier, plaintiff's rights under paragraph 29(b) are contingent upon it not being in default under any other provision. Paragraph 10 limits the use of the premises to a "retail store for the sale of ice cream and dessert products, sandwiches and other foods customarily sold in the normal fast food service business . . ." According to the defendant pizza is being sold on the premises. In addition, GNR is purportedly in the wholesale bulk frozen yogurt business on the premises and is operating an amusement arcade in the store. While the wholesale yogurt business may violate the lease if it is conducted as alleged, the sale of pizza falls within the scope of paragraph 10. The arcade presents a more difficult question since some use of amusement type games may fall within the purview of paragraph 10 because it may be the custom in the fast food business to use arcade games on the premises.

The evidence on the breach of paragraph 10 is quite limited at this point and thus will not support summary judgment. Defendant will be permitted, however, to present evidence on this issue at the trial.

In order to simplify the issues for trial, the scope of paragraph 29(b) will be considered regardless of whether plaintiff DQ has lost its rights under the clause. Without question, McDonald's is the type of competing business which falls within the description contained in paragraph 29(b) of the lease. Furthermore, the location leased to McDonald's is without dispute situated within three miles of the demised premises. Consequently, if plaintiff DQ retains its rights under paragraph 29(b), it is entitled to some form of relief.

◼ In the September 14, 1979 memorandum and order, plaintiff DQ was found to have suffered no irreparable harm but was permitted to vindicate and rely upon the irreparable harm of its sublease, GNR, as a basis for fulfilling one of the four requirements for a preliminary injunction. *Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products*, 545 F.2d 1096 (7th Cir. 1976). The Seventh Circuit Court of Appeals found that it was an error for this tribunal to have relied upon the harm to DQ's sublessee as a basis for the interim injunctive relief. At 258, 259. This Court must look instead to the irreparable injury to DQ, if any, since such harm must be shown for DQ to obtain injunctive relief, whether permanent or preliminary. D. Dobbs, Remedies § 2.10 at 108 (1973). The facts are insufficient to establish irreparable injury to DQ and, consequently, that issue will be litigated at trial. If the Court finds no irreparable harm, plaintiff will be permitted to prove damages.

Inasmuch as certain of the above issues certainly fall within the ambit of the equitable portion of this action, the trial will be to the Court as factfinder. Consequently, a *court trial* is scheduled for *Monday, August 11, 1980 at 10:00 A.M.* Discovery on all issues is to conclude by July 15, 1980. If all issues other than irreparable harm are resolved in plaintiff's favor, a *trial* on the damage issue will be held on a later date. In order for the Court to determine when the damage trial should be held, the parties should submit letters suggesting when, in their opinion, the damage trial, if any, would be appropriate. Unless the Court is convinced otherwise, or the parties stipulate, it is contemplated that the potential question of reasonable damages will also be tried to the Court. Finally, a *final pretrial conference* will be held on *Monday, July 28, 1980 at 9:00 A.M.*

In light of the above, plaintiff's motion for summary judgment is denied in part and granted in part. It is, furthermore, hereby ordered that the Court will hear evidence on the following points at the trial of this matter:

(1) whether plaintiff DQ has either waived its rights under paragraph 29(b) of the lease or abandoned them by being in default under paragraph 10 of the lease;

(2) whether plaintiff DQ will be irreparably harmed if McDonald's opened a restaurant in the Brown-Port Shopping Center and, if not, what amount of damages, if any, will fairly and reasonably compensate plaintiff DQ for defendant BP's breach of paragraph 29(b).