In the Matter of NORTHWOOD INDUSTRIES, INC., Debtor.

Bankruptcy No. MM7–82–00127.

United States Bankruptcy Court, W.D. Wisconsin.

Dec. 3, 1982.

Charles D. Koehler, Herrling, Clark, Hartzheim & Siddall, Ltd., Appleton, Wis.,

Christopher H. Evenson, Rhode Law Office, Portage, Wis., for creditor.

William Rameker, Murphy, Stolper, Brewster & Desmond, S.C., Madison, Wis., for trustee.

Julia J. Groeschel, Bennet & Bennet, Portage, Wis., for debtor.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

This case is now before the court on the debtor's motion to exercise its option to purchase and thereafter to sell the subject real estate, and also upon the application of William Glover for relief from the automatic stay under 11 U.S.C. § 362 so that he may continue his state court action to recover the subject real estate. Both motions arise out of a common set of facts and circumstances.

Northwood Industries, the debtor ("Northwood"), initially leased a metal building built to its specifications for plastic manufacturing and sales on April 12, 1972. The lease was for 10 years beginning July 1, 1972 with a 5-year renewal option, and included an option to purchase the building for $35,000 at the end of the 10-year period. The stated rent was $600 per month. The landlord, Glover, reserved the right to reenter the premises upon notice if the rent became more than 10 days in arrears or if the tenant otherwise breached the lease. The landlord's written consent was required to assign the lease or any rights under it.

Pursuant to an additional lease provision, a second building was constructed for the tenant in 1976. The lease was modified to require a monthly rental of $880 and an option price of $55,000 at the end of the original 10-year term. The modification specified that the term expired April 8, 1982, a fact not immediately apparent from the original lease.

When Northwood ceased business in winter or spring, 1981, the option was of considerable value; the market value of the building had risen to approximately $130,000. Sometime that spring, Douglas Kammer, Northwood's attorney, proposed to prepay 15 months rent and assume the lease. Glover refused to accept this proposal. In August, 1981, Northwood attempted to assign the lease to John Bowman, a former officer and shareholder then under contract to Northwood as a consultant. Glover also rejected the proposed assignment. While the building stood vacant, Northwood continued to pay monthly rent; borrowing from corporate principals and associates by means of a series of promissory notes. The group of creditors, including officers and employees who had loaned money to Northwood, had apparently decided to carry the rent payments until the end of the lease term and then exercise the purchase option. The rent for August and September 1981 was paid by checks drawn on the trust account of the Rhode Law Office. Both checks bore notes that they were Northwood's rent. The August rent check identifies its source as the "Lindstrom loan." Glover accepted and cashed those checks without question.

On October 10, 1981, the last date for payment of the October rent, John Bowman's wife Marcia personally delivered a check drawn on her personal account to Glover's home as payment of the rent. Like the checks tendered by the Rhode Law Office, the check was noted as Northwood's rent. Marcia Bowman was later reimbursed by Lindstrom. On October 21, 1981, Glover's attorney notified Northwood that its tenancy was terminated for untimely payment of rent, and that he would reenter the building. On October 26, 1981, Glover returned the check to Marcia Bowman, refusing the tender of rent for the stated reason that she was neither the lessee nor an assignee. Glover subsequently filed a circuit court action for reentry. No rent was tendered by or on behalf of Northwood after October 10, 1981.

The propriety of Glover's refusal of the October 1981 rent and the necessity of tendering rental payments thereafter must be determined before it is possible to assess the vitality of the purchase option. Glover contends that he was not required to accept

rent from a third party to the lease and that such acceptance would have operated to assign the lease. Northwood argues that this tender served only to satisfy the corporation's obligations under the lease, and when refused, made further tenders of rent unnecessary. For the reasons set out below, the court concludes that Glover had no legal basis for rejecting the October 1981 tender of rent, that further tenders were not required, and that the lease was illegally terminated.

Under Wis.Stat. § 704.03, an assignment of a remaining period of a lease in excess of 1 year must be in writing. At the time Marcia Bowman tendered her check, approximately 6 months of the original lease remained. Although the statute did not, therefore, require written assignment of the remaining leasehold interest, the terms of the lease specified that no assignment could be made without written consent of the landlord. Glover refused to give his consent, so no effective assignment was nor could have been accomplished. The risk Glover contends that he was protecting himself against was completely illusory.

Glover cited *Katz v. Miller,* 148 Wis. 63, 133 N.W. 1091 (1912) in support of the proposition that acceptance of rent from a third party operates to effect an assignment. However, in *Katz,* the trustee who brought an action for breach of lease by its assignment had been aware for years that the building had been sublet. He also knew that the predecessor trustees had orally consented to the sublease and had allowed the subtenant to alter the building at great cost for the purpose of further subletting the premises to a number of small businesses. The court held the trustee was bound by the consent of his predecessors notwithstanding the terms of the lease since the subtenant had greatly changed his position in reliance on the predecessors' apparent consent. Similarly, in *Galvin v. Lovell,* 257 Wis. 82, 42 N.W.2d 456 (1950), the court stated in dicta that the lessor had waived any possible violation by the plaintiff of its grocery store lease where the lessor was aware of the sublease, assisted in alterations to facilitate the sublease, voiced no objections to the lessee's plan, and accepted rent.

In *Baker v. McDel Corp.,* 53 Wis.2d 71, 191 N.W.2d 846 (1971), the defendant sought to avoid complying with an indemnity clause in a lease by arguing that the original lessee sublet to McDel in contravention of a clause prohibiting a sublease without lessor's permission. The lessor had leased its filling station to an individual who subsequently incorporated his business. Amoco did not contest the lower court's finding that it had waived any objections to the assignment, because it had known at all times that the individual had transferred his business to a corporation. None of these cases may be said to stand for the proposition that acceptance of rent from someone other than the named tenant is effective, standing alone, as recognition of an assignment in violation of the express terms of a lease.

In a case more similar to the present case, a lessor accepted rent from a third party without knowledge of an assignment and the court allowed the lessor to take action on the anti-assignment clause. *Plotkin v. Milwaukee Metal Working Co.,* 255 Wis. 456, 39 N.W.2d 439 (1949). Milwaukee Metal Working, tenant under a three-year lease with renewal option, initiated corporate dissolution and assigned its assets to the defendants, partners who owned all its stock. They in turn assigned the assets to Wisconsin Metal Working Co., which continued to operate Milwaukee Metal's business in the leased premises and paid rent with Milwaukee Metal Co. checks. The lessors only became aware of the assignment when Wisconsin Metal attempted to exercise the renewal option at the end of the lease term. The lessors then brought an equitable action for termination of the lease. The court stated that the lessor cannot waive a restriction against assignment or subletting by accepting rent and allowing the sublessee to remain in possession when he has no knowledge of the breach. 255 Wis. at 459, 39 N.W.2d 439. The court reiterated the policy against forfeitures in the following language:

While covenants against assignments or subletting are not favorably regarded by the courts and are liberally construed in favor of a lessee 'this means only that the scope of an assignment in a lease will not be enlarged by the courts, and that the covenant will not be considered as violated by any technical transfer that is not fairly and substantially an assignment.' *Id.* at 460, quoting *Chesnut v. Master Laboratories,* 148 Neb. 378, 27 N.W.2d 541 (1947).

■ Furthermore, Glover's prior acceptance of rent checks drawn on the Rhode Law Office trust account weakens his position regarding Marcia Bowman's check. American courts generally hold that a landlord may not predicate a forfeiture of the lease on tenant behavior that technically breaches the condition of the lease if, by his prior conduct, the landlord has lulled the tenant into believing the breach was acceptable behavior. This policy prevents a landlord from using previously acceptable tenant behavior to improve his position beyond that of the original bargain. The Seventh Circuit Court of Appeals has found waiver when the landlord has collected rent despite knowledge of a prohibited sublease. *American Dairy Queen Corp. v. Brown-Port Company,* 621 F.2d 255 (7th Cir.1980). The court stated: "waiver occurs when an obligor manifests an intent not to require an obligee to strictly comply with a contractual duty." *Id.* at 257, n. 1, quoting *Saverslak v. Davis-Cleaver Produce Company,* 606 F.2d 208, 213 (7th Cir.1979), *cert. denied* 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 762 (1980). Prior to his refusal of the October rent check Glover had accepted checks drawn on the Rhode Law Office trust account. He had not notified Northwood that future checks must be drawn on their own checking account. Thus, Glover did not have the right to declare Northwood in default on October 21, 1981 because his earlier conduct had reasonably led Northwood to believe that checks drawn on other accounts would be acceptable.

Had Northwood been advised in writing of Glover's requirement of strict compliance with the lease terms it could have easily met the formal requirements by having the principals deposit the loaned funds to Northwood's account and drawing checks thereon. The fact that the situation could have been remedied simply by changing the form in which the money was tendered, indicates how unjust it would be to permit a forfeiture.

■ A lessor may waive the clause prohibiting sublease by accepting rent from a party to whom the premises have actually been sublet. However, no case has been found which recognizes a de facto subleasing in the absence of any activities beyond the tender of rent. Nor has a case been found holding that the landlord waives a lease prohibition against assignment if he accepts rent without knowledge that the premises have been sublet. In the present case no activity other than the tender of the October rent has been alleged or proved which would give notice of or in fact demonstrate an assignment or sublease. No evidence was introduced to prove that Northwood had assigned the premises to another party. Although John Bowman had offered to sublease the building, he had neither altered the building nor occupied it. Lease payments were always tendered in Northwood's name and there is no evidence that Northwood surrendered possession to anyone.

■ As long as Northwood Industries satisfied its other lease obligations, the landlord could not declare default for the sole reason that the building was not in continuous use. *See Dougan v. H.J. Grell Co.,* 174 Wis. 17, 182 N.W. 350 (1921). In the absence of an express convenant of continuous operation, a lessor cannot deny the lessee's right to sublet and then declare an abandonment where the lessee has ceased operation of its business but continued to satisfy its rental obligations and sought permission to sublease the premises. *Rapids Associates v. Shopko Store, Inc.,* 96 Wis.2d 516, 292 N.W.2d 668 (Ct.App.1980).

Glover's action left Northwood no alternative. By accepting neither the offer to pay the balance due on the lease nor the

proposed assignment to Bowman, Northwood had no choice but to continue monthly payments to retain the value of the lease. A similar situation arose in *Pelikan v. Spheeris,* 252 Wis. 562, 32 N.W.2d 220 (1948). Pelikan held the premises under a lease restricting their use to a tavern. After his own tavern license was revoked, Pelikan, who had a substantial investment in the fixtures, sublet to another party who held a valid tavern license. At the end of the lease term, the lessors denied Pelikan his option to renew, and leased directly to the current tavern operator. The court reversed the lower court's judgment and ordered specific performance of Pelikan's option, saying:

> Appellant was placed in a position where he was comparatively helpless by the acts of respondent Realty Corporation. Forfeitures of leaseholds for condition broken and restrictions upon the right to sublet are both looked upon with disfavor and a construction of a contract which leads to either of these results will be avoided, if reasonably possible.

252 Wis. at 566, 32 N.W.2d 220.

It would be unjust to let Glover have the benefit of the disfavored provision of the lease by virtue of difficulties created by his own acts which have rendered Northwood helpless.

■ Finally, courts must carefully scrutinize the lessor's motives in forfeiture actions. *Humphrey v. Humphrey,* 254 Ala. 395, 48 So.2d 424 (1950), *American Dairy Queen Corp. v. Brown-Port Company,* 621 F.2d 255 (7th Cir.1980). To allow a forfeiture would overrule the bargain made nearly 10 years before. At the time of the alleged breach, Glover was aware that Northwood had gone out of business but intended to exercise the option. He also knew of the option's increased value. A forfeiture would allow Glover to avoid the consequences of his bargain with Northwood and to seize the appreciated value of the property for his own use.

■ Glover finally argues that failure to tender rent after October 1981 results in a failure of consideration and precludes the exercise of the option, relying on *Helbig v. Bonsness,* 227 Wis. 52, 277 N.W. 634 (1938),[1] and *Last v. Puehler,* 19 Wis.2d 291, 120 N.W.2d 120 (1963). Those cases must be distinguished from the present case because in each the lessor was clearly in default. For the reasons already set out herein, Northwood was not in default. Although Wisconsin courts have not addressed the question directly, other jurisdictions have held with unanimity that a tenant is not required to tender rent after the landlord refuses a tender and brings a forfeiture action. A clear statement of the rationale is provided by the Texas Court of Civil Appeals:

> Miller was not required to do a useless thing, and having been notified by Fant that the lease had been forfeited and that suit was to be filed to regain possession of the rented premises, it was unnecessary on the part of Miller to make further tenders of the rent until the legal rights of himself and of Fant had been established.

*Fant v. Miller,* 218 S.W.2d 901, 903 (Tex. Civ.App.1949).

The Nebraska court adopted the same position in *Hogan v. Pelton,* 210 Neb. 530, 315 N.W.2d 644 (1982). After finding that the landlord had refused tender of the rent and had declared the lease breached and forfeited, the court stated:

> The law does not require a useless formality. A formal tender is not necessary where a party has shown by act or word that it would not be accepted if made.

315 N.W.2d at 647.

In the present case, Glover refused Marcia Bowman's tender of Northwood's rent and declared the lease in default for nonpay-

---

**1.** *Helbig* actually provides a powerful argument for Northwood. In that case, the court ruled that the rent was a necessary consideration after the lessee attempted to exercise the option without having made any rent payments. In contrast, Northwood faithfully paid its rent for nearly 10 years, tendering it through interested third parties as the lease period came to a close.

ment. Northwood had no obligation to tender additional rent owed until Glover's suit for forfeiture and reentry was decided.

■ Having concluded that the option had not expired at the time relief was ordered in this case on March 31, 1982, we must now determine whether that option has been preserved during the administration of the case and whether it can now be exercised by the trustee. 11 U.S.C. § 365(d)(1), provides:

> In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.

See In Re Genesis Corp., MM7–79–01466 (Bankr.W.D.Wis. April 3, 1981); In Re Price Chopper Supermarkets, Inc., 19 B.R. 462, 8 B.C.D. 1263, 6 C.B.C.2d 557 (Bkrtcy.S.C.Cal. 1982).

In the present case, the trustee took no action to assume the lease or to extend the time period within the 60 days following the order for relief dated March 31, 1982. The debtor in this involuntary liquidation has not cooperated with the trustee's attempts to discover the financial affairs of the business. The debtor failed to appear at the first meeting of creditors on April 19, 1982, and the trustee filed a no-asset report on that date. It is amazing that creditors who went to the extreme measure of filing the involuntary petition to preserve the value of the option did not follow through by promptly informing the trustee of the history and value of that option, but there is no indication any special effort was made to educate the normally conscientious and diligent trustee appointed in this case. The trustee testified that he first learned of the value of the option in early June of 1982, from the attorney for the petitioning creditors. On August 3, 1982, the trustee applied for and was granted an ex parte extension of 30 days in which to assume or reject the unexpired lease. Within that 30-day period, the trustee sought the court's approval for assumption of the lease.

Since the trustee's only action to assume came within the extension granted on August 3, 1982, the question arises whether the court had the authority to grant the extension after the 60 days from the order for relief had passed. The trustee contends that the court has the power under 11 U.S.C. § 105 to extend the 60-day time period. No case authority has been cited for this proposition, nor has any been found. Collier states (without citing authority): "If the sixty day period expires the court will be without power to extend it thereafter." 2 Collier on Bankruptcy ¶ 365.03 at 365–19 (15th ed. 1979).

The trustee would have had a stronger argument if the option had not appeared on the debtor's schedule of assets filed on March 29, 1982. In Texas Western Financial Corp. v. McCraw Candies, Inc., 347 F.Supp. 445 (N.D.Tex.1972) the court concluded that a trustee would not be deemed to have rejected a contract under Bankruptcy Act § 110 where the claim was not listed as an asset on the debtor's schedule. In the present case, however, the option to purchase the two buildings was listed on schedule B–1, as an asset worth $45,000.

Despite the generally recognized scope of the all writs statute (11 U.S.C. § 105) there was, in the absence of diligent but fruitless inquiry within the 60 days or any proper extension thereof, no legal or equitable right of the trustee to protect when the extension order was entered on August 3, 1982. Lacking an equitable basis for doing so, the court lacked the power to extend the period for assuming contracts. That extension must therefore be voided.

The contract having not been properly assumed by the trustee must be deemed rejected. Rejection of the contract terminates the right to exercise the option. The option and the lease would therefore pass out of the debtor's estate and the stay against any action by Glover to foreclose upon or recover the real estate would be terminated.

Judgment may be entered accordingly.